## Board of Councilmen, City of Frankfort v. Morris.

(Decided June 22, 1923.)

### Appeal from Franklin Circuit Court.

1. Municipal Corporations—Construction of Statutes—Franchise to Street Railways.—Section 3290, Kentucky Statutes, a part of the charter of cities of the third class, provides: "Said city shall reserve the right to require such companies . . . to pay the cost of paving or otherwise improving between its rails and for a reasonable distance on either side threof." Held, that the city could not surrender this right but that it must be reserved in the franchise to be exercised or not in the discretion of the board of councilmen of the city at the time of enactment of the street improvement ordinance.

2. Municipal Corporations—Street Improvements.—Section 3450, Kentucky Statutes, a part of the same charter, authorizes an assess-

ment against the property of a street railway in such city when so required by the franchise or contract; held that these two sections must be construed together, that the latter contemplates a mandatory provision of the franchise or contract requiring such assessment but that it is equally applicable to a franchise giving the board of councilmen the right to determine whether or not such assessment shall be made, and that an ordinance which does not require the street railway to pay part of the cost of the street improvement is not invalid on that account.

3.    Municipal Corporations—Street Improvements.—Section 3450, Kentucky Statutes, providing for a general ordinance fixing the proportion of the cost to be borne by the city and the owners of property abutting on the streets to be improved, and further providing that such provision shall not be repealed or changed except at intervals of 10 years or more, contemplates work being done or contracted under or by virtue of the ordinance. Until such work is performed or contracts let or some contract right arises, such ordinance is in the nature of a resolution, which may be repealed at the pleasure of the board of councilmen.

4.    Municipal Corporations—Assessment for Street Improvement—Discrimination.—Section 3450, Kentucky Statutes, requires uniformity of assessment in the payment of cost of street improvement. Where an ordinance provided for improvement on different streets at the expense of property owners of the city, in one zone of which the cost was proportioned between an interurban railway and the property owners; in a second zone between city and the property owners, and in a third to be borne by the property owners alone, the ordinance was discriminatory and invalid.

E. C. O'REAR, O'REAR, FOWLER & WALLACE and JAMES H. POLSGROVE for appellants.

MORRIS & JONES for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

The Kentucky Traction & Terminal Company was the owner of two franchises in the city of Frankfort, a city of the third class, which it had purchased on June 6, 1903, and the 14th day of May, 1906, respectively. Both covered practically all of the streets of the city, the first being for a city railway and by virtue of which it operated a city railway over certain streets; the second being for an interurban or trunk line railway, and under which it has since operated such railway for a short distance over a limited number of streets.

The city desired the improvement of certain streets but was informed that the railway company would not

repurchase a franchise for the city railway, if it was compelled to contribute to the cost of the improvement of the streets it traversed.

Acting on this knowledge, on the 28th day of May, 1923, the city council passed an ordinance providing for the reconstruction of several streets, part of which were traversed by the interurban railway, part by the city railway, and some of which had no railway. It was provided that the total cost of all the improvements should be paid by the owners of abutting property, except that the Kentucky Traction & Terminal Company was to pay for the improvement between the rails of its tracks and eighteen inches on each side thereof, so far as its interurban lines were operated, and that the city should pay the cost of such improvement on all street intersections and in front of abutting city property, and also between the tracks of the railway company on those tracks that were used by the city railway only.

This suit was brought against the city council by a citizen and taxpayer to test the validity of that ordinance. The lower court held that it was invalid, and this appeal results.

It is urged, (1) that the ordinance is in conflict with the city charter; (2) that it is discriminatory; (3) that it is a departure from the general plan of city improvement adopted by the city within less than ten years since, and (4) is an effort to either exempt private property from taxation or to donate public funds to private enterprise.

By section 3290, subsection 35, Kentucky Statutes, authority is given the city council in cities of the third class to grant franchises to railways for the use of its streets. It in part reads:

"Said city shall reserve the right to require such companies to conform to any changed or altered grades of said streets and public grounds, to pay the cost of paving or otherwise improving between its rails, and for reasonable distance on either side thereof."

This section is a part of chapter 89.

Section 3450, Ky. Stats., is also a part of that chapter and by it the city council is empowered to make street improvements and provide for the payment of the cost, the part referring to street railways being in part:

"When in any such city having therein a street railway and the railway company is required by its franchise, or by any contract with the city, to pave or improve any parts of the streets or alleys of the city proposed to be improved, the cost of paving such portion of such streets or alleys shall be assessed against such railway company, and a tax shall be levied upon all the property, assets and franchises of such company in the city for the payment thereof."

Under the first section the city may or may not, either in its franchise or otherwise, contract with the railway company for the latter to pay the cost of improvements between its rails and adjacent thereto, but it (the city) cannot surrender its right to require such payment, and this right must be reserved in the franchise, to be exercised at the option of its council at the time the ordinance providing for the improvements is enacted. The statute was enacted before the days of motor vehicle competition, but even then in small cities the earnings of street railways were small, and the probabilities of success in such ventures uncertain. It may be that the legislature had in view cases where the earnings would be insufficient to enable the company to pay for street improvement, and for that reason reserved the right to require payment for such improvement, but left its determination to the discretion of the city council ordering the improvements. Whatever may have been its reasons, the discretion is left to the board, and it contains no provisions which can be construed as mandatorily directing such payment to be made by the company.

The second section relating to the cost of improvements contemplates the existence of franchises or of other contracts in which the railway company is required to pay the cost of such improvement; but it is equally applicable to those in which the right to require such payment is reserved under section 3290, and the city council has exercised its option and directed such payment. It will thus be seen that these two sections harmonize and should be construed together; in no event does the latter repeal or amend the former as they relate to entirely different subjects, besides they in no way conflict with each other. We therefore conclude that the city council could exercise its discretion and in its wisdom say whether or not the railway company should pay such cost, and its action in this respect does not render the ordinance invalid.

It appears that in 1916 and since a number of ordinances were passed by the city council providing the amount of costs to be paid by the city in street improvement. Only one of these was a general ordinance, and that was repealed in a very short time. It further appears that no contract was made or work done under any of them, except one, and that particular one was held invalid in a regular suit in the circuit court. It is claimed that those ordinances are repugnant to another provision of section 3450, *supra,* which reads:

"The common council or said board of commissioners of any city of the third class may provide by general ordinance that such city shall pay part, and if so, what part of the cost of the improvement of the streets, alleys or other public ways (excluding sidewalks) of such city. When such provisions is made it shall be uniform and thereafter apply to the improvement of all streets, alleys and public ways in the city (excluding sidewalks), and such general provision shall not thereafter be changed or repealed except at intervals of ten years or more."

The purpose of this statute is to secure uniformity. As the city may pay any part (short of all) of the costs, this part could be changed in every ordinance, hence to avoid inequality, it was necessary to have a general ordinance for its control for a long period of years; but although passed, until acted upon in some way, by working or accepting a contract for work thereunder, such ordinance would have no more effect than a resolution, and it would seem that the power to adopt such measures would carry with it the power to repeal them. No contract rights were acquired by virtue of them, nor could anyone be prejudiced by their repeal; nor is this view in conflict with the opinion of this court in the case of Mann v. City of Henderson, 194 Ky. 759, as this feature was not discussed in that case. It follows that the ordinance is not objectionable in this particular. As the board of councilmen are given a discretion in determining the question of assessing improvement costs against the city railway company, their action in refusing to make such assessment was not an exemption of the company from taxation, nor a donation of public funds to its benefit.

As to discrimination, it appears that there are three classes of property owners, directly affected by the ordinance. First. Those owning abutting property on the streets that are occupied by tracks of the interurban. Second. Those owning property on streets occupied by

the city railway. Third. Those whose property abuts on streets on which there is no railway. The ordinance will affect them thus: In the first class, the approximate division of cost will be one-third each to the interurban railway and to the property owners on either side, and in addition the latter will furnish their proportion of the taxes necessary for the city to pay the cost of improvement between the city railway tracks; in the second class, the city will assume the part the interurban takes in the first class and the property holders will share equally in the cost with those in the first class; in the third class, the property owners pay all the cost, one-half on each side and in addition the same proportion of taxes as do the other classes.

Now, so far as the first class is concerned it may be said that the presence of the interurban tracks and franchise simply adds an additional property owner to that zone and presents a condition not to be found elsewhere; that in effect the cost is apportioned between the property owners there being, and this is not of itself a discrimination against other property owners residing in a zone not reached by those tracks, whether on the same street or elsewhere, and it may be conceded that the city has equalized the second class with the first; but it cannot be argued that the ordinance does not discriminate against the third class, who are not only required to pay the entire cost of improvement on their streets, but also to pay by their taxes a part of the cost assumed by the city.

In City of Tompkinsville v. Miller, 195 Ky. 144, a street was improved during the year 1916, for a distance of one-half mile at the cost of the city. Subsequently in 1920 the city undertook to improve the other part of the street at the cost of the owners. In denying the right this court quoted with approval the following excerpt from Wickliffe v. City of Greenville, 170 Ky. 528:

"Furthermore, while the city may adopt either of three plans provided by statute, it must follow the same plan in all cases. It was never intended that the city should or could pay the entire cost of constructing a street in front of A.'s property and require B to pay the entire cost of making the street in front of his property. Uniformity and equality of burdens require that the same system of apportionment, whichever it may be, should govern in all cases."

And further said:

"There would be no difference in principle, between where a citizen is required to pay the entire costs of constructing the street in front of his property, and where he is required to pay two-thirds of it, and upon the same street, the city should pay the entire costs of constructing the street in front of others property."

We can draw no distinction between the present ordinance and those criticized by the cases cited. Indeed, as the statute (section 3450) requires the provision of a general ordinance fixing the city's part of the cost of improvement to be uniform and apply to all streets, alleys and public ways in the city, it would certainly apply to a continuous line of improvement for which provision is made in one ordinance, whether on one or several streets, and for this reason only we conclude the ordinance is invalid. But this does not leave the city without remedy.

If it desires to remedy the ordinance it could adopt the same provisions as to the zone occupied by the interurban tracks, and as to the others to be improved it could make a uniform provision throughout, either by providing for a division in the payment of costs between it and the owners of property abutting on those streets, or by requiring that all of the costs be paid by such property owners. It will be understood that nothing we have said refers to street intersections.

Judgment affirmed.

Whole court sitting.