**CORYELL COUNTY v. BURKE & CORBETT et al. (No. 618.)**

Court of Civil Appeals of Texas. Waco.
Jan. 26, 1928.

Rehearing Denied March 1, 1928.

1. **Highways** &#9756;113(3)—Road construction contract held not dependent for validity on county's contracts with others relative to funds (Vernon's Ann. Civ. St. Supp. 1918, art. 6904½k).

Where county entered into contract to employ plaintiffs to construct state aid road, which contract was properly authorized as to funds furnished by the state pursuant to Vernon's Ann. Civ. St. Supp. 1918, art. 6904½k, validity of employment contract *held* not dependent on validity of contracts between county and others relative to furnishing funds.

2. **Highways** &#9756;113(2)—Road construction contract held neither void nor voidable because made by county's agents and not by commissioners' court (Rev. St. 1925, art. 1580).

Where county judge and a commissioner entered into a contract, for the county, for the employment of plaintiffs to construct a certain road, *held* in action on contract that, because of Rev. St. 1925, art. 1580, such contract was neither void nor voidable on ground that it was not entered into for the county by the commissioners' court, as such court, since it was made pursuant to authority conferred on the county

judge and a commissioner by commissioners' court.

3. **Highways** &#9756;113(3)—Commissioners' court, by permitting contractors to continue work under contract with commissioner and judge, ratified such contract.

Where, through contract of employment made by county judge and one commissioner, plaintiffs were employed to construct a certain road for the county, *held*, in suit by such persons for payment for work and labor, wherein county's defense was lack of proper authorization for contract by commissioners' court, that, since commissioners' court knew plaintiffs had been so employed, fully understood terms of employment, and permitted plaintiffs to continue work until road was 75 per cent. completed, such court thereby fully ratified acts of its agents in entering into such employment for county.

4. **Highways** &#9756;113(3)—County road contract held not void because not let on competitive bid, where contractors were to be paid out of state aid fund (Rev. St. 1925, art. 2368).

Where county entered into contract of employment with plaintiffs for plaintiffs to construct a highway, funds for which were to be derived from state aid fund, from certain city, and indirectly from a state training school, and not from county itself, *held*, in action on such contract, that contract was not void for not having been let on a competitive bid, pursuant to Rev. St. 1925, art. 2368, since funds therefor were not furnished by the county.

5. **Highways** &#9756;113(3)—County's contract for construction of road to be paid for out of state aid fund held not void because bond was not required (Rev. St. 1925, art. 2368).

Where county entered into contract with plaintiffs to construct a road, the money for which was to be furnished from state aid fund, from a city and, indirectly, from state training school, but was not to be furnished by county itself, *held*, in action on such contract, that contract was not void, because no bond was required of the road builders pursuant to Rev. St. 1925, art. 2368, because of funds not being furnished by county.

6. **Highways** &#9756;113(1)—Contract with county to build road to be paid for out of state aid fund, not let competitively, created relationship in nature of employment, county being record contractor.

Where officers, for county, entered into contract with themselves and their successors for construction of road to be paid for by others, persons employed pursuant thereto to build the road were employees, rather than contractors with county for road building, where all details as to work, material, character, and price of road had been fixed and agreed on between commissioners' court and state highway department without regard to persons who were to do actual building.

7. **Highways** &#9756;113(3)—Employment of plaintiffs by county judge and commissioner to build road for county held not void or voidable for lack of authority or proper conformance with law.

Where county judge and one commissioner entered into contract of employment with plain-

tiffs to construct a certain road for county, *held*, in action for payment for work done and for materials furnished, that such contract was neither void nor voidable because of method of employment or persons by whom plaintiffs were employed, or because of any lack of competitive bids or other observance of statute in the employment.

**8. Counties ⚫116—Statute relative to bids for contracts is limited to work that is naturally competitive (Rev. St. 1925, art. 2368).**

Rev. St. 1925, art. 2368, providing that the commissioners' court shall not make contracts requiring an expenditure of $2,000 or more out of any county funds without submitting contract to bids, is limited to work that is in its nature competitive.

**9. Highways ⚫113(4)—County stopping employees from working on road, which employees had agreed to build, when work was partly finished, was liable for breach of contract, though employment was not directly by commissioners' court (Rev. St. 1925, art. 1572).**

Where the county had entered into an employment contract with plaintiffs for plaintiffs to build a certain road, but construction of such road was stopped when 75 per cent. completed, upon which employees sued for work and materials furnished, but not for damages, *held* that county's stopping plaintiffs and not paying them was a breach of contract, even though the contract had not been entered into directly by the commissioners' court, pursuant to Rev. St. 1925, art. 1572, providing that county shall act by such court, but by county judge and a commissioner.

**10. Counties ⚫47—County may be held liable for acts of commissioners' court within scope, or apparent scope, of powers.**

Acts of commissioners' court, done within scope, or apparent scope, of powers vested in it under Constitution and laws, are acts of county, and, where counties in their corporate capacities commit a wrong in relation to property, the county, like any other corporation or individual, may be held liable.

Appeal from District Court, Coryell County; Joe H. Eidson, Judge.

Suit by Burke & Corbett against Coryell County, in which a number of persons intervened seeking judgment against Burke & Corbett. From the judgment, defendant county appeals. Affirmed.

T. R. Mears, of Gatesville, and Sleeper, Boynton & Kendall, of Waco, for appellant.

McClellan & Cross, of Gatesville, for appellees.

STANFORD, J. Suit by appellees Burke & Corbett against appellant to recover compensation alleged to be due them for labor and material furnished in the construction of highway No. 93. A number of parties intervened, seeking recovery against Burke & Corbett for labor and material furnished in the said construction. On a trial before the court without a jury, the court rendered judgment in favor of various interveners against Burke & Corbett for labor and material furnished, and also in favor of Burke & Corbett against Coryell county for $12,412.41, and directed that said amount be paid to the clerk of said court, and that out of said amount said clerk first pay the amounts awarded said interveners, and that the remainder, if any, be paid to Burke & Corbett. Appellant alone has appealed, and presents the record here for review. A more complete statement will be made in connection with our disposition of appellant's assignments.

Under numerous assignments, appellant contends, in effect, that appellees Burke & Corbett had no contract with appellant to furnish the material and do said road work, but that, if there was such contract, the same was void, because: (1) Said employment was not on competitive bid; (2) said work involved the expenditure of more than $2,000, and no bond was required of appellees; (3) the commissioners' court had no authority to make said contract by its county judge and one of its commissioners, and said contract so made, being void, could not be validated by a ratification by said court, etc. The record discloses that state highway No. 93, which had been taken over by the state, extended from the public square in the city of Gatesville, along Main street of said city to the corporate limits, then on to the State Juvenile Training School, a total distance of about three miles. There was a good deal of negotiation by the county, the city of Gatesville, and the training school, each acting by its representatives, in an effort to have said road improved. The county commissioners were interested, in that they were interested in good roads in the county generally, but the county had no county funds to so use, but it was the only party in position to secure state aid. The city was interested, in that one of its principal streets would thereby be improved. The training school, and likewise the state, was interested, in that a good road would thereby be furnished from the city out to said state institution. The parties finally agreed, in substance, that, if the county, through its commissioners' court, would secure state aid to the extent of 50 per cent. of the cost, and undertake to make said improvement, the training school would furnish the county all of the teams and tools necessary, and all the common labor, etc., and the city of Gatesville on its part agreed to furnish $6,000 to be paid to the county when said improvement was completed. So, with the above understanding the county, through its commissioners' court, had plans and specifications of said proposed improvement made by Henry C. Porter, division engineer, giving a detailed statement and estimated cost of the work, totaling $41,250, and attached same to its ap-

---

⚫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

plication to the highway department for aid in doing said work, the allotment asked being $20,625, and in said application was included a resolution by the commissioners' court appropriating to said improvement labor, teams, and equipment of the State Juvenile Training School to the amount of $20,625. The division engineer, on March 18,.1925, made a report on the above application to the acting state highway engineer. Among other things, this report states, in effect, that the county has no cash funds for this work, but proposes to furnish all common labor, teams, and tools furnished to the county by the State Juvenile Training School, amounting to 50 per cent. or more of the cost of said construction. This report states further:

"Coryell county proposes to advertise this work for bids the same as any other project, and the county submit a bid in due form, with unit prices conforming with the prevailing prices for this class of work in this section of the state. If any contractor bids on the work, the court intends to advise that the county has no funds with which to do this work, but has the common labor and teams, and that, if the work is done, the county will have to bid the work in."

By letter, the highway commission notified the county judge of Coryell county that it had apportioned $20,626 state aid to Coryell county on state highway No. 93 from Gatesville to the State Juvenile Training School, said aid not to exceed 50 per cent. of the actual cost of construction; said letter reciting further:

"It will be necessary for the county to have plans prepared for this project. * * * After the plans have been prepared and approved by the department, the county will have to bid in the work."

The county had the plans and specifications for the work prepared by the county engineer, giving an itemized statement of the entire work, and the cost or price per item, making a total for the entire improvement of $32,945.55, which was duly approved by the highway department by its state highway engineer; after which Coryell county, acting by its commissioners' court, submitted a proposal, with a copy of said itemized statement of the improvement totaling $32,945.55 and plans and specifications attached, to the highway commission, to provide all the machinery, tools, do all the work, and furnish all the materials called for in the contract and specifications and to construct said improvement according to the requirements of the engineer as set forth in said plans and· specifications and itemized statement, and for the amount therein stated. This proposal states:

"It is understood that the county has no specific funds for this job; but is depending on labor, teams, and tools of the State Juvenile Training School, as per original application for aid. * . * * The undersigned agrees and pledges itself to complete the work in full by January 1, 1926. * * * Work to be done to the entire satisfaction of the state highway engineer."

This proposal was signed by Coryell county, by L. M. Stinnett, county judge; W. B. Jones, T. H. Key, N. E. Jaroe, and B. L. Morrison, county commissioners. This proposal was accepted by the state highway department, and, on June 15, 1925, a formal written contract was entered into between Coryell county, represented by the then members of the commissioners' court of said county, party of the first part, and Coryell county, represented by the then members of the commissioners' court of said county and their successors in office, party of the second part, subject to the approval of the state highway commission, by the terms of which Coryell county, represented by the then members of. the commissioners' court and their successors in office, party of the second part, contracted with Coryell county, represented by the then members of the commissioners' court, party of the first part, "that for and in consideration of the prices and agreement mentioned in the proposal hereto attached and made a part of this contract, the party of the second part agrees to do at its own proper cost and expense all the work, and to furnish all the material, necessary for the improvement of road No. 93 * * * in accordance with the original application for aid, * * * and in accordance with the * * * specifications, proposal, and plans aforesaid, which are made part of this contract, and in full compliance with all of the terms of the specifications and the requirements of the engineer." The second party further agreed to begin the work as soon as authorized by the state highway department, and to complete same not later than January 1, 1926. The party of the first part, in consideration of the full performance of the work by said second party, obligated itself to pay to the second party the prices set forth in the attached proposal, and in the manner provided in the specifications aforesaid. This contract is duly executed by the parties of the first and second part, and recommended for approval June 15, 1925, by the division engineer, and approved by the state highway engineer on June 16, 1925.

Coryell county did some grubbing and clearing of the right of way for said highway No. 93, and, on July 12, 1926, obtained from the state highway department an extension of the time for the completion of said work; and on the same date, July 12, 1926, said county entered into a contract assigning its contract to W. E. Burke, but the state highway department failed to approve this contract. On December 17, 1926, the commissioners' court of Coryell county adopted by resolution a schedule of prices to be paid for all

classes of labor to be performed on said work, the rentals to be paid for various kinds of machinery, tools, wagons, trucks, graders, etc., every phase of said work being covered by said schedule, which was approved by the resident engineer and the highway department by the state highway engineer. On or about July 13, 1926, the commissioners' court adopted a resolution reciting the fact that the highway department had failed to approve the subcontract with W. E. Burke, and to secure such approval would cause further delay, and, as the highway engineer on July 13, 1926, had approved the extension of the county's contract to construct said road to January 1, 1927, that said subcontract with Burke being inchoate, "the same is hereby canceled, and it is further ordered that L. M. Stinnett, county judge, and Commissioner B. L. Morrison are hereby instructed to take immediate and such steps as may be necessary for and on behalf of this court to complete said project." In pursuance of this instruction by the commissioners' court, L. M. Stinnett, county judge, and Commissioner Morrison, with the assistance of D. C. Fisher, the county engineer, on July 17, 1926, employed J. H. Corbett to do said work. The matter was fully explained to, Corbett, that the county had no funds for said work, and was not to be out anything, but that the county would receive 50 per cent. of the cost of said work, approximately $16,000, from the state highway department, and $6,000 from the city of Gatesville, which was put in escrow, to be paid when the work was completed. In consideration of the county paying over these amounts when collected, and the benefit of cheap labor from the training school, Corbett agreed to furnish all the machinery, material, and labor, and construct said road according to plans and specifications and detailed statement of the work, all of which had been approved by the state highway department, and all of said work to be approved by said department. Corbett, or rather, Burke & Corbett, as partners, began said work on July 19, 1926, and continued on said work until December 1, 1926, the work then being about 75 per cent. complete, when said work was stopped by the county judge, with the approval of the commissioners' court. During this time monthly estimates were made by the resident engineer and approved by the division engineer on blanks prepared by the highway department, and vouchers for one-half of said estimates, less 10 per cent. held back, sent by the highway department to Coryell county, and by said county or the resident engineer paid to Burke & Corbett. On January 10, 1927, the court adopted a resolution reciting that the time allotted to the county to complete said work had expired, and that the same was not finally and fully completed, so the time for the completion was extended from January 1, 1927, to July 1,

1927, which was approved by the resident engineer of the highway department.

In passing upon the questions involved in this case, it should be remembered that the state and its training school, the city of Gatesville and Coryell county were all vitally interested in having said road constructed. The city had funds, and was willing to aid in constructing the part of said highway within its corporate limits. The state highway department had funds that could be applied to aid to the extent of 50 per cent. of the cost, but, in order for said funds to be so used, it was necessary that application therefor be made by the county. Article 6904½k, Vernon's 1918 Supplement. The county had no funds that could be used on said work, but was in position to secure said state aid to the extent of 50 per cent., if it could in some way take care of the other 50 per cent., and to accomplish this, and after much negotiation between the county and the city and between the county and the State Training School, the city placed in escrow $6,000 under a contract directing same to be paid to the county on completion of the road, and, when called for by the county, to be by it used in paying for said improvement.

The State Training School on its part agreed to furnish its tools, machinery, wagons, and teams, etc., and common labor at $1 per day while such labor was worth and could be scheduled at $2.50 per day, in arriving at the 50 per cent. to be paid by the highway commission. This was not concealed from the highway commission, but was fully understood by all parties interested. So the county having, by means of the $6,000 put up by the city, and by reason of its getting the benefit of the cheap labor, teams, tools, etc., furnished by the training school, arranged for its 50 per cent. of the cost of said work, made application to the state highway commission for an allotment for this project, which was granted. By reason of the county having no funds for said work, and by reason of the manner in which the county was to provide its 50 per cent. of the cost, it was fully understood by the county and the highway department that it could not be let to an outside party, and, if the work was done, it would have to be let to the county, and it was also understood the county was not to make any profit.

[1] As we view the case, it is not necessary to decide whether or not the county had an enforceable contract with the highway department or with the city of Gatesville, or whether or not the contract of the county by its then commissioners with said county by its said commissioners and their successors in office, was enforceable. The commissioners' court had jurisdiction of all roads in the county, and was charged by statute with the duty of improving and keeping same in repair. The net result of all said contracts and

agreements was, if the county through its then commissioners or their successors in office would furnish the labor and material and construct highway No. 93 extending from the public square in the city of Gatesville to the State Juvenile Training School, in accordance with the plans and specifications and detailed statement of the work, estimated to cost approximately $32,000, then said highway department would pay to the county as the work progressed 50 per cent. of the cost thereof; and the training school would give the county the benefit of its cheap labor, etc., as above stated; and the city of Gatesville would pay over to the county the $6,000 placed in escrow when needed to pay for said work. It will thus be seen the county had authority to employ appellees to do said work, and the validity of such contract of employment was in no way dependent upon the validity of the contracts between the county and the highway department, or between the county and the city of Gatesville. The only purpose in referring to said contracts in the contract of employment of appellees was for a full description of the work to be done, and that there might be a clear understanding of the amount of money available for said work and the sources from which it was to be received by the county.

[2, 3] Neither do we think such contract of employment was void or voidable on the ground that it was made by an agent of the county with appellees, and not by the commissioners' court as such court. The record discloses the commissioners' court wanted appellees to do said work, and, with this end in view, by a formal order assigned its contract to appellees, and entered into a contract with them to do said work; but the highway department failed to approve this action of the court, whereupon the court by formal order canceled this contract, and ordered and instructed its county judge and Commissioner B. L. Morrison to "take immediate and such steps as may be necessary for and on behalf of this court to complete said project." The amount of money available for the work, and how it was to be paid, every detail of the work, the material, character, and price of same, had all been fixed and agreed upon between the commissioners' court and the highway department. There was nothing left to be done, except to employ some one to go forward with the work as specified, a purely ministerial act. In pursuance to the authority conferred upon them by the commissioners' court, the county judge and Commissioner Morrison employed appellees. This employment was legal, and binding upon the county. Article 1580, Revised Civil Statutes 1925; Jackson, etc., v. Hutchinson (Tex. Civ. App.) 88 S. W. 412; Galveston Co. v. Gresham (Tex. Civ. App.) 220 S. W. 560 (writ refused); City Nat. Bank of Austin v. Presidio County (Tex. Civ. App.) 26 S. W. 775; Water-

bury v. City of Laredo, 60 Tex. 519; Orange County v. Hogg et al. (Tex. Civ. App.) 269 S. W. 225. The county, represented by its commissioners' court, knew appellees had been so employed on July 17, 1926, and fully understood the terms of such employment, and permitted them to continue the work from July 19, 1926, to December 1, 1926, until the work was 75 per cent. completed. Under said employment paid them for all monthly estimates due, except the last one, without ever at any time objecting to such employment, and so said court thereby fully ratified the acts of its said agents in such employment. Boydstron et al. v. Rockwall County, 86 Tex. 234, 24 S. W. 272; Gussett v. Nueces County et al. (Tex. Com. App.) 235 S. W. 857; Leon County v. Vann et al., 86 Tex. 707, 27 S. W. 258; Galveston County v. Gresham (Tex. Civ. App.) 220 S. W. 560 (writ refused); 21 C. J. p. 1190.

[4] Neither do we think, under the peculiar circumstances of this case, that the contract of employment of appellees by appellant was void because not let on competitive bid and bond furnished by appellees. As above stated, plans and specifications were prepared by the resident engineer covering every feature of the work to be done. This same engineer, who was a representative of the highway department, also prepared an itemized statement dividing the work into sixteen units, itemizing the amount, character, and cost of each item of labor, also the amount, character, and cost of each item of material placed in the road complete, the entire cost being $32,945.55, all of which was approved by the highway department, and was attached to, and made a part of, the county's proposal to construct said road, which proposal was accepted by the highway department. After the highway department failed to approve the assignment of this contract by the county to Burke & Corbett, the county, through its county judge and Commissioner Morrison, employed appellees to take charge of said work for the county, at the same time explaining to them that the county had no funds, and was not to be out a dollar, but that the county would receive approximately $16,000 from the highway department and $6,000 from the city of Gatesville, showing them its contracts with said parties, and explained to appellees they would get the benefit of the cheap labor from the training school. So, with the understanding that the county would collect the amounts to be paid by the highway department and the city of Gatesville, respectively, as per its contract with said parties, and pay same over to appellees, and give appellees the benefit of said cheap labor, appellees agreed to construct said road, under the direct supervision of the commissioners' court, representing the county, and the resident engineer, representing the highway department, according to the plans,

specifications, and detailed statement or schedule of amount, character, and prices of labor, material, etc.

[5] L. M. Stinnett, county judge, testified, in substance, that he told Mr. Corbett that he could not and would not receive any bid, and that, if he bid on the work, his bid would be rejected; that he explained to Mr. Corbett that the county could not subcontract that job because the county had no funds in it, and it was unnecessary for him to bid on the job, so he did not bid, and did not offer to bid. The record also discloses that appellees offered to make a bond, but the county judge informed them he did not want a bond, that the county would hold back the $6,000 to be paid by the city in lieu of a bond. Article 2368, Revised Statutes 1925, provides:

"No commissioners' court shall make a contract calling for or requiring the expenditure or payment of two thousand dollars or. more out of any fund or funds of *any county* or subdivision of any county, without first submitting such proposed contract ·to competitive bids," etc., and requiring a bond, etc.    (Italics ours.)

[6] But the facts of this case do not come within the purview of said statute. No county funds were to be used in said work. The county was not in position to let the contract on competitive bids, in that it had no funds that could be used in said improvement. The county needed no bond to protect its funds, for none were involved. The highway department and the city were furnishing the money. The highway department was protected, in that the improvement was required to be done under the direct supervision of its resident engineer, and in accordance with plans and specifications and detailed schedules prepared by him, and no payments were to be made, except upon estimates prepared by him and approved by its divisional engineer. The city was protected, in that no part of its $6,000 was to be paid until the work was completed and accepted. A bond to the county would have been useless, as it would have furnished no protection to the highway department nor to the city of Gatesville, and the county needed no protection. Nor do we think the character of employment of appellees was that of contractor, but rather as employees. The county remained the record contractor. Every detail of the work and the cost thereof had been agreed upon between the county and the highway department and the county and the city, and $16,-000 set apart by the highway department and $6,000 by the city of Gatesville for the construction of said road.

[7, 8] We do not think the county could have been compelled to construct said road by either the highway department or the city of Gatesville, but, if the county did construct said road in accordance with its contract ·with said parties, respectively, then each of said parties would have become liable to it for the amount promised to be paid. Of course, the county necessarily had to do the work through others, and its employment of appellees by verbal agreement was more in the nature of employees to assemble the necessary machinery, material, labor, and supervise and carry forward said work for the county, and under the direct supervision of the county through its commissioners and the highway department through its resident engineer. We do not think the employment of appellees under the facts of this case was void or voidable; there being no evidence in the record of fraud or collusion on the part of any one connected with such employment. The county was not in position to obligate itself to pay unconditionally any sum to a contractor to do said work, but to pay only such sums as it expected to receive from the highway department and the city of Gatesville; hence we think the work was not competitive in its nature, and it is not doing violence to the statute to construe it to be limited to work that is in its nature competitive and not otherwise. Commissioners' Court of Floyd Co. v. Nichols (Tex. Civ. App.) 142 S. W. 37; New York Cent. R. Co. v. Westchester Co., 173 App. Div. 263, 159 N. Y. S. 560; State v. Cass, 32 Ohio Cir. Ct. 208, 220; 15 C. J., p. 549, sec. 242.

Appellant contends, further, that the court erred in rendering judgment in favor of appellees for $12,412.40, because the undisputed evidence shows that, if there was any contract between appellant and appellees, it was expressly provided and understood that appellant should not be liable for any amount. It is true, it was understood that the county had no funds to be used in building said road, and that the county was not to be out any amount. But it is also true the county employed appellees to build said road, and agreed that the $16,000 coming to it from the highway department and the $6,000 coming to it from the city would be paid to them, and, relying upon said agreement on the part of the appellant, appellees proceeded with said work, and, after appellees had continued said work from July 19, 1926, to December 1, 1926, and had it 75 per cent. completed, and had incurred debts for labor and material to the amount of $8,085.58, and at a time when the county had in its possession a check from the highway department· for $3,707.98, which belonged to appellees in payment of the fourth monthly estimate on said work, the county judge, with the approval of the commissioners' court, stopped appellees from going any further with said work, refused to pay appellees for the work they had done, refused to turn over the check which rightfully belonged to them, took charge of, and appropriated, their material on hand of the value of $1,294, and left appellees nothing, except an indebtedness of some $8,000 for labor and material used in building said road to 75 per cent. complete.

[9, 10] Of course, if the county had attempted to carry out its part of said contract, and had failed to pay over the amounts it had agreed to pay over because it was unable to collect said amounts from the highway department and the city, then it would not have been liable. But the highway department was faithfully performing its part of its agreement by promptly paying the monthly estimates as sent in, and the highway department, as late as June 4, 1927, indicated that they were still willing to pay their 50 per cent. The city of Gatesville has never refused to pay, but has signified its willingness to pay its part when called on by the county. The act of Coryell county, through its county judge, with the approval of the county commissioners' court, in stopping appellees from said work, was a breach of its contract with appellees, for which the county is liable. Counties, by the provisions of our statutes (article 1572), are bodies corporate and politic, and act by the commissioners' court, composed of the county judge and the four commissioners. The acts of the commissioners' court, done within the scope or apparent scope of the powers vested in it under the Constitution and laws, are the acts of the county, and, where counties in their corporate capacities commit a wrong in relation to property, the county, like any other corporation or individual, may be held liable. Comanche Co. v. Burks (Tex. Civ. App.) 166 S. W. 470 (writ refused); Horn v. Matagorda County (Tex. Com. App.) 213 S. W. 934. The appellees had no other remedy. Not being parties to the contracts between the county and the highway department, and the county and the city of Gatesville, and the relation of employer and employee not existing between appellees and either the highway department or the city, appellees had no right of action against either the highway department or the city. Appellees did not sue for damages or any contemplated profits, but sued and recovered for only the amount due for work actually done and material furnished, according to the terms of the contracts of the county with the highway department and with the city, and said amount recovered being the amount estimated to be due for work actually done, as estimated by the highway department through its resident engineer.

There is no contention that there was fraud in any of said transactions; that any funds of Coryell county have been, or sought to be, dissipated in any way; but Coryell county received three miles of modern highway without cost of one cent to its taxpayers. It has received, and now holds, $3,708, which it refused to pay over to appellees. It stopped work on the contract and payment of money to appellees, thereby preventing them from receiving money with which to pay the laborers who did the work, and others who furnished the material to build said road. The judgment of the court certainly does justice to all parties interested, in that it provides for the payment first of all claims for labor and material used in the construction of said road, which claims are numerous, and are adjudicated by the court, and found to be correct, amounting in the aggregate to $8,085.58, and provides only the remainder shall be paid to appellees; and, as the highway department and the city of Gatesville has each at all times signified its willingness to perform its contract with the county, and pay the county as it agreed to do, it is reasonably certain the county could not suffer, unless it be to the extent of the costs of this proceeding.

While we have not discussed all of appellant's assignments, we have considered all of them, and, finding no reversible error, overrule same. The judgment of the trial court is affirmed.