W. E. DOZIER V. CITY OF GATESVILLE.

No. 5860. Decided April 28, 1932.
(48 S. W., 2d Series, 971.)

*R. B. Cross,* of Gatesville, and *Wilcox & Graves,* of Georgetown, for appellant.

If the contract between Dozier and the City of Gatesville was illegal for any of the reasons urged by the City of Gatesville, the City nevertheless is liable on implied contract for reasonable value of labor and materials furnished and benefits which it may have received from work done by the said Dozier. Sluder v. City of San Antonio, 2 S. W. (2d) 841; Coryell County v. Burke & Corbett, 4 S. W. (2d) 283; Austin Bros. v. Montague County, 10 S. W. (2d) 718; 15 C. J., 554; Boydston v. Rockwall County, 86 Texas, 234, 24 S. W., 272; Gossett v. Nueces County, 235 S. W., 857.

*Tom R. Mears* and *Robert W. Brown,* both of Gatesville, for appellee.

Plaintiff's allegations that the City of Gatesville had entered into a contract with him to pave in front of Beck and Show's property and agreed to guarantee the paving certificates issued by the city against Beck and Show as adjoining property owners was subject to general demurrer and the general demurrer should have been sustained.

In the absence of statute expressly authorizing the purchase by the City of paving certificates that it had issued for street improvements against abutting property owner's property that the City could not either purchase or become guarantor for said certificates. Watson v. City of Center, 286 S. W., 859.

MR. JUDGE CRITZ delivered the opinion for the Commission of Appeals, Section A.

This case is before us on certified questions from the Court of Civil Appeals for the Tenth District at Waco. The certificate fully states the case and is as follows:

"Appellee, City of Gatesville, purporting to act under the provisions of Article 1086 et seq., Revised Statutes, entered into a contract with W. E. Dozier, appellant herein, by the terms of which he agreed to improve certain streets in said city by constructing curb and laying gutter and pavement thereon. The City agreed to pay one-fourth of the cost of such improvement and to assess three-fourths of the cost thereof against abutting property owners, and to issue to him its negotiable certificates therefor. The contract expressly stipulated that appellant should not be required to improve or pave in front of any property unless the owner thereof made satisfactory arrangements with him for payment therefor. The record does not disclose the extent of the improvement contracted for further than that the same included a portion of Main Street, upon which block 21 of New Addition to said city abutted. On or about the 3rd day of September, 1926, appellant had completed his contract except that he had not placed the curb and laid the gutter and pavement in front of two pieces of property abutting on said street, designated as lots 1 and 7 in said block. He declined to curb, gutter and pave in front of said properties on the ground that said lot 1, abutting 90.7 feet on said street, was owned and occupied by one Show as a homestead and that he had failed and refused to execute a mechanic's lieu to secure payment for such improvement; and that said lot 7, abutting 108.9 feet on said street, was owned and occupied by one Beck as a homestead and that he had failed and refused to execute a mechanic's lien to secure payment for said improvement. On that day, by an instrument termed a supplemental contract, the City agreed with appellant that he should construct said improvements in front of each of said lots under the terms and conditions of the original contract, and that in consideration thereof the City should enforce the collection of the assessment certificates to be issued in his favor against said lots and the owners thereof. The City, on September 6th, 1926, made a final assessment against lot 1 and the owner thereof of its proportionate part of the cost of improving said street in the sum of $271.12, and against said lot 7 and the owner thereof of its proportionate part of the cost of improving said street in the sum of $326.52, and on the 9th day of September, 1926, passed an ordinance making a formal levy of such assessments. Assessment certificates were issued

by the City to appellant against each of said pieces of property and the owner thereof for the respective amounts aforesaid. Said certificates were dated December 23rd, 1926. Each of the same recited that the assessments so made was for the pro rata cost of improving Main Street under said original contract of January 25th, 1926, and authorized the amount assessed to be paid in installments and provided for maturing the same in case of default. Each certificate also provided that deferred payments should bear interest at the rate of eight per cent per annum, and for the payment of costs of collection and reasonable attorney's fees if incurred. No payment was made on either of said certificates.

"Appellant demanded of both Show and Beck payment of said certificates, respectively, according to their terms and matured the same for failure to comply with such demand. He thereupon delivered the same to the City Attorney of said City for suit. Suit was instituted by the City for the use and benefit of appellant on each of said certificates and prosecuted to final judgment. The suit against said Show resulted in personal judgment against him in favor of the City for the use and benefit of appellant for the principal and interest due on his certificate, with an allowance of $50.00 additional as attorney's fees. The court refused to foreclose any lien on his property on the ground that the same was his homestead. The suit against said Beck resulted in a judgment in his favor on the ground that he had been discharged from personal liability in bankruptcy, and refusing to foreclose the assessment lien on his property on the ground that the same was his homestead.

"Appellant thereafter instituted this suit against the City of Gatesville on said supplemental contract to recover against it the principal and accrued interest on said assessments, amounting in the aggregate to $607.00, and ten per cent on that amount as attorney's fees. He alleged in his petition in detail the facts above outlined, and further, that all parties knew that an assessment lien would be void and the assessment uncollectible, but that nevertheless the City, acting through its officials, agreed and obligated itself to enforce such lien. Other issues raised by said petition, on which further recovery was sought, need not be recited in this certificate. The City presented general and special exceptions to said petition, the substance of which was that the supplemental contract was contrary to law and public policy, and that the City could not become guarantor, surety or purchaser of the assessment certificates to be issued against said two pieces of prop-

erty and the respective owners thereof. The issues raised by the remainder of the City's answer need not be recited in this certificate. Appellant thereafter filed a supplemental petition, in which he alleged, in substance, in event said supplemental contract should be held insufficient and void, that he had constructed the improvements specified therein, that the City had accepted and used the same and that the same was reasonably worth the amount sued for herein, and sought recovery therefor.

"The case was tried to the court. All the City's exceptions were overruled and judgment. was rendered in favor of appellant against the City for the full amount, principal, interest and attorney's fees sued for, less a certain offset not material in this certificate. Appellant perfected an appeal to this court and the City filed cross assignments of error, complaining among other things of the overruling of its exceptions.

"The statute under consideration clearly provides that a city acting thereunder is authorized thereby to make such improvements wholly at the cost of the city, or partly at the cost of the city and partly at the cost of the abutting property owners. A difference of opinion, however, has arisen among the members of this court with reference to the authority of a city to combine at one time these two separate methods of payment in the improvement of a particular portion of a particular portion of a particular street, and upon the ground of benefits conferred, assess three-fourths of the cost of such improvement against all abutting property owners except two and to pay the entire cost of improving the street in front of such two pieces of property itself, or, as appellant alleged was done in this case, before the acceptance of the work done by the contractor, to induce him to improve the street in front of said two pieces of property under the terms and provisions of his original contract, to agree by supplemental contract to issue assessment certificates against said pieces of property and the owners thereof and to enforce the collection of such certificates, thereby incurring full responsibility for the cost of such improvements, knowing and realizing at the time that such certificates would be in fact uncollectible. The doubt entertained by part of the court of the right of the City of Gatesville to enter into the supplemental contract alleged in this case and to become obligated thereunder to pay the entire cost of constructing the street improvement in front of the two particular pieces of property involved, thus conferring upon such properties and the owners thereof without the payment of anything therefor the same benefit

received by other abutting owners, all of whom were required to pay three-fourths of the cost of such improvement in front of their respective properties, is based in part upon the rules announced in Wickliffe v. City of Greenville, 170 Ky., 528, 186 S. W., 476, where the court, upon consideration of a statute similar in many respects to our own, said: 'It never was intended that the city should or could pay the entire cost of constructing a street in front of A's property and require B to pay the entire cost of making a street in front of his property. Uniformity and equality of burdens require that the same system of apportionment, whichever it may be, should govern all cases.' Also, in part upon the following authorities: Board of Councilmen v. Morris, 200 Ky., 59, 252 S. W., 142; City of Tompkinsville v. Miller, 195 Ky., 143, 241 S. W., 809; Ormsby v. City of London, 220 Ky., 143, 294 S. W., 1025; Watson v. City of Center (Texas Civ. App.), 286 S. W., 859; 44 C. J., p. 490, sec. 2820; Id., p. 653 et seq., secs. 3098 and 3101, and authorities cited in notes thereto.

"We deem it proper, in view of the importance of the issue of law involved herein, to certify to your Honors for determination the following questions:

### "FIRST QUESTION

"Did the trial court err in overruling the City's general and special exceptions to appellant's original petition assailing the validity of the contract sued upon?

### "SECOND QUESTION

"In event of an affirmative answer to the above question, we respectfully submit our second question:

"Is the judgment rendered herein by the trial court supported by appellant's first supplemental petition, considered in connection with his original petition? If so, do such pleadings support the recovery of contractual interest at the rate of eight per cent and attorney's fees for prosecuting the suit?"

\* \* \* \* \*

### OPINION.

Under the laws of this State the city is given general supervision and control over its streets. It is the duty of the city to keep such streets in a reasonably safe condition for use as such, and the city, in certain instances, is liable in damages for injuries resulting from the negligent construction or maintenance of its streets.

When a street is paved and skips left therein on account of the inability of the city to fix liens on the abutting properties to secure assessments for paving in front thereof such skips or unpaved places are still parts of the street, subject to be used by the city and general public as such, and the mere fact that these skips or unpaved places cannot be paved by fixing liens on the abutting properties does not relieve the city of its legal duty, nor deprive it of its lawful right to still exercise supervision and control over such unpaved portions. Also the city in maintaining and improving these unpaved portions has the right to exercise sound judgment and discretion, and the mere fact that it has assessed liens against other properties and cannot assess liens against the properties abutting such skips does not alter the situation.

In the case at bar the City went as far as the Constitution and laws of this State would permit in assessing the costs of this paving against the abutting property and its owners. The several ordinances and proceedings, without discrimination, assessed benefits against all abutting properties and their owners, including these two properties and their owners. Of course such assessments could not operate to fix liens on homesteads in cases where the owners refused to assent thereto in the manner and within the time required by our Constitution and laws, but such fact did not operate to render the contracts and orders discriminatory.

To sustain the contention made by the City to the effect that the contract here involved is void, under the facts of this case, because discriminatory would bring about an intolerable situation. Such a holding would, in effect, be saying that should the city attempt to pave a street on the plan of assessing part of the cost against abutting property and its owners, and skips or unpaved portions be left therein on account of homestead claims, the city could not thereafter improve such skips or unpaved portions without being guilty of unjust and illegal discrimination. Such a holding would operate to deprive the city of the right to control its own streets, and would further operate to relieve it of its obligation to keep and maintain the same in a reasonably safe condition.

■ When the supplemental contract is viewed in the light of the entire transaction, which includes its own terms, the terms of the original contract, and all proceedings and transactions had in connection therewith, and the end sought to be accomplished, it is evident that it is not a guaranty or surety obligation in the sense that the City undertook to stand as a surety or guarantor

for the obligations of Beck and Show for their benefit; but it is the obligation of the City itself made for its own benefit. This is because, as above shown, the City had the right to still exercise control and jurisdiction over the portions of the street included in these two skips, and it was still its duty to keep same in a reasonably safe condition for use as such. Also it still had the right to use its own sound judgment and discretion in exercising such powers and discharging such duties.

It is true that the supplemental contract, according to its letter, binds the City only "to enforce the collection of the paving certificate issued in favor of W. E. Dozier, Contractor, against the property of G. C. Beck and J. B. Show," etc., but the legal effect of the entire transaction is to bind the City on its own account and for its own benefit to pay for the paving in the event payment cannot be enforced against Beck and Show.

We have read and carefully considered the several authorities cited in the certificate and in our opinion none of them conflict with the views here expressed.

We recommend that the first question be answered "No." The answer to this question makes it unnecessary to answer the second question.

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

C. M. CURETON, Chief Justice.