## DOZIER v. CITY OF GATESVILLE.
### No. 962.

Court of Civil Appeals of Texas. Waco.
June 2, 1932.

Rehearing Denied June 30, 1932.

See, also (Tex. Civ. App.) 4 S.W.(2d) 131.

Wilcox & Graves, of Georgetown, and R. B. Cross, of Gatesville, for appellant.

T. R. Mears and Robt. W. Brown, both of Gatesville, for appellee.

BARCUS, J.

In February, 1926, appellee passed the necessary ordinance and made the legal assessments against the abutting property for three-fourths of the cost for the paving of certain streets within its corporate limits, and let the contract for said paving to appellant. Under the terms of the paving contract appellant was not obligated to pave any of said streets unless he could make proper arrangements with the abutting property owners to give liens on their respective properties for said paving. Under a verbal agreement the asphalt for the paving was shipped to Gatesville in the name of appellee, and appellant was to pay the freight and any demurrage. Appellant completed all of the paving called for in the contract except 108 feet abutting the property of G. C. Beck and 90 feet abutting the property of J. B. Shows. He refused to pave that portion of the property because said parties refused to execute the proper liens. In order that it might have said property paved, appellee made a supplemental contract with appellant, same being duly authorized by an ordinance passed by its governing body, under the terms of which appellee agreed, bound, and obligated itself to enforce the collection of the paving certificates issued against the properties of Beck and Shows if appellant would proceed to pave said street abutting said properties. In consideration therefor and relying upon said contract, appellant did pave said property; the cost therefor as per the original contract being $326.52 against the Beck property and $271.12 against the Shows property, for which appellee issued its certificates. When the paving certificates became due, Shows and Beck each refused to pay the same and appellant notified appellee thereof, and appellee then filed suits against said parties for the collection thereof. Beck filed his petition therefor and was discharged in bankruptcy and no judgment was rendered against him. Shows pleaded his homestead and the lien against his property was therefore denied, and appellee was unable to enforce the collection of any of said certificates.

Appellant, on December 31, 1928, filed this suit against appellee to recover the full amount of certificates issued against the Beck and Shows properties, together with interest and attorney's fees. In February, 1930, appellee answered by special plea, alleging that the contract made by appellee to guarantee the payment of said paving lien was ultra vires and in violation of law, and further alleged that under the terms of the contract it did not as a matter of fact promise or agree to pay same, but that its only duty thereunder was to use its best efforts to collect same. In addition, it filed a cross-action against appellant for $207, which it claimed it had been compelled to pay for appellant as demurrage on the asphalt that had been used by appellant for the paving of said streets. In reply to the cross-action appellant pleaded the statute of limitation, and further alleged that all matters in controversy between him and appellee with reference to claim for demurrage had been settled in November, 1926, after the paving had been completed and at the time the final settlement therefor was made. He further alleged that if appellee did pay any demurrage said demurrage was not due to the railway company or any one else, and that the payment was made by appellee as a volunteer after notice from him that the debt was not due and a request from him to appellee not to pay same and a notification that if it did pay same he would not in any way be responsible therefor.

The cause was tried to the court and resulted in judgment being rendered in favor of appellant for $836.69, being the principal, interest, and attorney's fees due on the paving certificates, at the time of trial. The court also rendered judgment in favor of appellee against appellant for $207, the amount appellee claimed to have paid as demurrage, and the judgment provided that appellee's judgment against appellant should be allowed as a credit on the judgment in favor of appellant against appellee. Both parties excepted to the judgment and gave notice of appeal. Appellant has filed the record for review, and appellee has filed cross-assignments.

Appellant contends that the judgment rendered against it for the $207, demurrage claimed, is not supported by the evidence, and further that appellee as a matter of law is not entitled to recover said amount or any portion thereof, because it appears without dispute that appellee paid same as a volunteer and over the protest and positive command and direction of him to appellee not to pay the same. The record shows that when appellant and appellee made their final settlement in November, 1926, the question of the demurrage item in litigation was discussed and appellant at that time told appellee that same was not just or due and that the railway company was not entitled to any of the claimed demurrage, and after said statement appellee paid appellant the balance that was due him for the city's portion of the pavement under the original contract. In May, 1927, appellee wrote appellant that the railway company was claiming the $207 demurrage, and appellant promptly wrote appellee that same was not due and that it was not a

just demand and that there was no demurrage due the railway company and told appellee not to pay said amount and warned it that if it did do so he (appellant) would not pay same to it (appellee), and asked appellee to refer the railway company to him. On September 27, 1927, without any further correspondence, appellee voluntarily paid the railway company the $207 claimed demurrage. On the trial of this case appellant testified positively that the demurrage was not a just demand and that there was no demurrage due the railway company. There was no effort made on the part of appellee to show that the railway company as a matter of fact was entitled to any portion of said demurrage and no effort made to show its justness. Under said undisputed facts the trial court was not authorized to render a judgment in favor of appellee against appellant for said demurrage. The rule seems to be well settled that a payment made by one person on account of another where not made at the other's request will not create as against the other an obligation in favor of the person making the payment. Mings v. Griggsby Construction Co. (Tex. Civ. App.) 106 S. W. 192; Richardson v. Neill, 3 Willson, Civ. Cas. Ct. App. 250, § 204; Hunt County v. Greer (Tex. Civ. App.) 214 S. W. 605, reversed on other grounds (Tex. Com. App.) 249 S. W. 831; 41 C. J. 12, 23. The rule laid down in 41 C. J. 13, par. 3, states: "It is elementary that a voluntary payment for the benefit of another cannot be recovered at law or ordinarily in equity, unless that other has subsequently ratified such payment." 41 C. J. 23, par. 31, states: "There is no presumption that one who pays a debt of another does so at his request. * * * The burden of proof is on the plaintiff to show that he has paid money to some person at the request of defendant, expressed or implied."

In this case the written record shows without dispute that at the time appellee paid the demurrage it did so not only without any request by appellant, but over the written protest of appellant and with the positive statement from appellant that same was not a just claim and that he would not pay therefor. If the railway company had a just claim against appellee that appellant was liable to appellee for, appellee could have required the railway company to file suit and made appellant a party thereto and have determined whether the amount was just or not.

Appellee by various cross-assignments contends that appellant was not entitled to recover because appellee was not authorized to make a contract as alleged by appellee, its contention being that said contract was ultra vires. It further contends that the contract did not specifically obligate the city to pay said paving certificates, but at the most only obligated the city to use its best efforts to collect same, and the record showing the city did file suits and use all methods available to collect said paving certificates, it had thereby, as a matter of law, discharged its obligations arising under said contract.

It appears from the record that appellant refused to pave the streets abutting the properties of Beck and Shows because he and appellee knew that said properties were the homesteads of said parties and that a paving lien could not be enforced against them, and appellant was not willing to do the work without some security for his pay therefor. After all of the other paving was done in order to have said property paved, the city, under the terms of the supplemental agreement, contracted positively with appellant that if he would do said paving it would guarantee the enforcement of the collection of said certificates, and admittedly the proper ordinance authorizing said supplemental contract to be made was passed by the governing body of appellee and same was properly executed before appellant would or did do the paving.

Articles 1086 and 1088 of the Revised Statutes provide specifically that the city may have the streets improved and either pay for same wholly out of the city's funds or assess a part thereof, not to exceed three-fourths of the cost, against the abutting property. The original contract as drawn assessed three-fourths of the cost against the abutting property and the city was to pay one-fourth thereof. In order to get the paving done on the property abutting that of Beck and Shows, the effect of the supplemental contract as made by appellee with appellant was that appellee would pay all of the cost of the paving of the property abutting that owned by Beck and Shows. In Montgomery v. City of Alamo Heights (Tex. Civ. App.) 8 S.W.(2d) 258 (writ dis.), the court specifically held that under the above statutes the city could have streets paved and pay for all of the cost thereof out of the city's funds. Unquestionably, under said authority, as well as under article 1088 of the Revised Statutes, the city, through its governing board, can, if it sees fit, have its streets paved and pay therefor wholly out of the city's funds. Our Supreme Court, in answering a certified question in this case, held that appellee had the power to make the contract it did to pay appellant for the paving. Dozier v. City of Gatesville (Tex. Com. App.) 48 S.W.(2d) 971.

We cannot agree with appellee's contention that its obligation to enforce the collection of the paving certificates against Beck and Shows as provided in the contract meant only that it would use its best efforts to collect same. The contract provides that in consideration of appellant paving the property, "the City of Gatesville does hereby agree, bind and obligate itself to enforce the collection of the paving certificates issued in favor of W. E. Dozier, the contractor, against the

property of G. C. Beck and J. B. Shows." It is an undisputed fact that appellant refused to do the paving until he was assured the price therefor would be paid. The record clearly indicates that each of the parties at the time construed and understood the contract to mean that appellee was guaranteeing the payment of said certificates. 20 C. J. 1256 states: "Enforce in general means to cause to be executed or performed; to cause to take effect; to compel obedience to; to put in force." It was to appellee's advantage to have the said street ·paved in its entirety rather than have the two breaks remain on the property abutting that owned by Beck and Shows. Appellant having in reliance on the contract done the work and appellee having received the benefit thereunder, appellee cannot after said work is performed refuse payment therefor. Sluder v. City of San Antonio (Tex. Com. App.) 2 S.W.(2d) 841; Coryell County v. Burke & Corbett (Tex. Civ. App.) 4 S.W.(2d) 283; Austin Bros. v. Montague County (Tex. Com. App.) 10 S.W.(2d) 718. Appellee's cross-assignments are all overruled.

The judgment of the trial court awarding appellant judgment against appellee for the sum of $836.69, with interest from its date at 8 per cent. per annum, is in all things affirmed. That portion of the judgment which awards appellee judgment against appellant for $207 is reversed, and judgment is here rendered denying appellee any recovery thereon.