## GALVESTON COUNTY v. GRESHAM.
### (No. 7814.)

(Court of Civil Appeals of Texas. Galveston. Jan. 28, 1920. Rehearing Denied Feb. 26, 1920.)

1. Counties ⬥105(1)—Construction of sea wall is "county business."

The construction of a sea wall within the limits of a city for the protection of the lives and property of the inhabitants of the county is "county business" within the jurisdiction of the commissioners' court under Const. art. 11, § 7, article 5, § 18, and Vernon's Sayles' Ann. Civ. St. 1914, art. 5585.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, County Business.]

2. Counties ⬥113(5)—Can employ attorney to aid in procuring sea wall.

The commissioners' court, having broad power to construct a sea wall, has authority to employ an attorney to aid in carrying out that power.

3. Counties ⬥153½—Payment to attorney who secured rights for sea wall constructed by government not grant to government.

Where an extension of a sea wall was necessary for the protection of the lives and property of inhabitants of a county but the greater part of the wall was built by the federal government, payment by the county to the attorney who secured the government's consent to the construction and procured title to the right of way to other land desired by the government was not invalid as a grant to the government.

4. Counties ⬥113(5)—Contract for attorney's services held not extra compensation.

A contract between county authorities and an attorney fixing the compensation of the attorney for services in procuring the consent of the government to aid in constructing a sea wall within the county and to procure rights of way and other necessary titles is not invalid as a grant of extra compensation contrary to Const. art. 3, § 53, though part of the services had been rendered before the contract was signed, where total compensation was less than the reasonable fee for the services.

5. Counties ⬥50—Commissioners' court may delegate selection of attorney and fixing compensation.

After the commissioners' court has passed a resolution directing the employment of counsel for a specified purpose, it may delegate to the county judge and chairman of the finance committee ministerial executive duties of selecting the attorney and fixing his compensation.

6. Counties ⬥124(2)—Acceptance of attorney's services ratified contract of employment.

The acceptance by the commissioners' court of the services of an attorney rendered under a contract made in behalf of the county by the county judge and chairman of the finance committee is a ratification of the contract which makes it binding on the county, though it was not formally approved by the commissioners' court.

7. Contracts ⬥126—Public appearance by attorney before committee of Congress is not "lobbying."

The public appearance by an attorney employed by a county before the river and harbors committee of Congress, to explain and urge its approval of a proposed improvement, without attempt to use personal influence, is not "lobbying," and a contract for such services is not contrary to public policy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Lobby.]

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Action by Walter Gresham against Galveston County. Judgment for plaintiff, and defendant appeals. Affirmed.

Chas. H. Theobald and W. E. Cranford, both of Galveston, for appellant.

Lockhart & Lockhart, W. T. Armstrong, and Wm. B. Lockhart, all of Galveston, for appellee.

GRAVES, J. On January 13, 1914, the commissioners' court of Galveston county adopted this resolution:

"Resolved: By the commissioners' court of said county, Galveston county, that the county judge and the chairman of the finance committee of this court are hereby appointed a committee with authority to employ counsel to represent Galveston county in all legal and legislative matters pertaining to the construction of a sea wall and boulevard from near Sixth street and Broadway to Ft. San Jacinto in accordance with the recommendations of the board of United States engineers as set forth in House Document No. 1390 of the Sixty-Second Congress, Third Session. Said committee shall have full power to act."

House Document No. 1390, Sixty-Second Congress, Third Session, thus referred to, in so far as the same is applicable to the issues herein, is as follows:

"10. The special board invites attention to the advisability of protecting the narrow neck between the city of Galveston and Ft. San Jacinto. It believes that in time of great storm this neck may be breached, resulting in serious damage to the Galveston Channel. It believes that the sea wall should be extended, and that this work should be done through the co-operation of the United States and the city of Galveston. The total extension of sea wall proposed is 10,300 feet, of which the special board believes the United States should provide 7,000 feet and the city 3,300 feet. The estimate for the work proposed to be done by the United States is $1,185,000. This work is recommended by the special board 'contingent on a satisfactory cession to the United States, free of cost, of all land east and north of a line originating at the intersection of the center line of the south jetty with the present southern boundary of the Ft. San Jacinto reservation and extending thence approximately S. 16 deg. E. to the Gulf of Mexico (this line being made parallel to the numbered streets of the city of Galveston)' and 'upon the quieting of any claims that may be outstanding to the present Ft. San Jacinto reservation' as well as 'upon local interests providing for the building of that portion of the extension which lies between the angle of the present sea wall at Sixth street and Broadway and the above new boundary proposed for the government reservation.'"

Three days after this order had been adopted, the county judge and chairman of the finance committee, in the form of a report to the commissioners' court, duly employed Mr. Gresham, an attorney at law of many years standing in Galveston, to perform the services authorized in the order, under the following written contract, which was duly accepted by him:

"To the Commissioners' Court of Galveston County, Texas—Gentlemen: By virtue of the authority conferred upon the undersigned, as set forth in the order of this court, adopted January 13th, 1914, we did on the 16th day of January last employ Walter Gresham, Esq., to represent this county as its attorney before the proper committee or committees of Congress in the matter of the extension of the sea wall as described in said order.

"Under this employment Mr. Gresham is also to render such legal services as may be necessary to secure the right of way for the county's portion of the sea wall extension, and the conveyance to the government of the land referred to in the report submitted in House Document No. 1390, Sixty-Second Congress, Third Session.

"We instructed Mr. Gresham to urge that Congress authorize the entire work of the sea wall extension to be done under the direction of the Secretary of War, and that the boulevard along the government's sea wall extension conform to that constructed by the county.

"For such services rendered and to be rendered, the county of Galveston agrees and promises to pay to the said Walter Gresham, the sum of two thousand and five hundred dollars ($2,500), which sum shall become due and payable as soon as the contract for the building of the sea wall is executed by the proper parties. The payment of this fee is necessarily dependent upon the extension of the sea wall by the government.

"Very respectfully, [Signed] G. E. Mann, County Judge Galveston County. [Signed] Fred C. Pabst, Chairman of Finance Committee.

"I have accepted employment upon the terms and for the consideration stated in the above. [Signed] Walter Gresham."

Having, as he claimed, fully performed this contract upon his part and rendered the services therein specified, Mr. Gresham filed his claim for the $2,500 fee due him under its term with the commissioners' court of Galveston county, which that court, after first referring it to the county auditor for approval and receiving his refusal to do so, declined to pay. Mr. Gresham thereupon sued and recovered judgment for the amount against the county in the Fifty-Sixth district court. From that judgment the county prosecutes this appeal.

It is here contended that the contract, being an indivisible agreement to pay the lump sum promised for all the services contemplated by it, was one beyond the power of the commissioners' court to make and void in toto, in that:

(1) The services engaged and the things to be done by the attorney were not matters of "county business," to which the jurisdiction of the commissioners' court is limited under article 5, § 18, of our Constitution.

220 S.W.—36

(2) No authority to make it was conferred either by article 11, § 7, of the Constitution, or by the acts of the Legislature of 1901 and 1913 (Vernon's Sayles' Statute, 2241, and 5585).

(3) The contract is in effect a grant of the money of Galveston county in aid of the government of the United States, and of Mr. Maco Stewart, in violation of article 3, §§ 51 and 52, of our Constitution.

(4) It contravened article 3, § 53, of the same instrument, in that some of the services for which the fee as a whole was to be paid had already been performed at the time it was entered into.

(5) It was shown to be an attempt—without subsequent acceptance or ratification by it—of the commissioners' court to delegate to agents the exercise of such judgment and discretionary powers as are exclusively reposed by the Constitution and laws of this state in that court alone.

(6) That it appeared upon its face and otherwise that the contract was a lobbying one, and therefore against public policy.

[1] We think none of the objections well taken. It seems to us that under our Constitution, statutes, and decisions, the building of the east-end sea wall and the procurement of legal services in furtherance thereof was clearly "county business" within the jurisdiction of the commissioners' court. See Constitution, § 7, art. 11; section 18, art. 5; Revised Statutes 1911, art. 5585; Acts 1901, 1 S. S., p. 23, § 1; Acts 1913, S. S., p. 3, § 1, amending Act 5585, Revised Statutes 1911; Vernon's Civil Statutes, art. 5585; Johnson v. Galveston County, 85 S. W. 511; Railway Co. v. Vance, 155 S. W. 699; Fayette County v. Krause, 31 Tex. Civ. App. 569, 73 S. W. 53; City National Bank v. Presidio County, 26 S. W. 777.

The express purpose of this public enterprise, as reflected in the court's order and the contract, was the protection of the property and lives of the people of Galveston county, and surely that was the business of the county as a municipal corporation, since one of its concededly highest duties was the expenditure of public funds arising from taxation for public improvements. The fact that the United States government was induced to furnish funds for the larger part of the cost of the work did not make it any the less county business.

In Johnson v. Galveston County, supra, this court held that the county could build a sea wall within the limits of the city, and that under the Constitution, art. 11, § 7, and the statute of 1901, both above cited, the commissioners' court's jurisdiction in managing the county's affairs is coextensive with its limits, saying:

"The authority conferred by the Sea Wall Act upon counties bordering upon the coast to construct sea walls for the protection of such counties from calamitous overflows from the Gulf is given in the broadest terms."

[2] And if the commissioners' court thus had the broad power to construct this extension of the sea wall, its like authority to enlist the services of the appellee to that end would follow as a necessary implication; that being deemed essential to the exercise of the power and duty imposed upon it. Bank v. Presidio County, 26 S. W. 775; Waterbury v. City of Laredo, 60 Tex. 519.

[3] Neither, in our opinion, may this agreement to pay for the professional services of an attorney at law in any proper sense be termed a grant of the money of Galveston county in aid of the government of the United States, or of Mr. Stewart. The facts were that, pursuant to its duty, the county was about to undertake the building of a sea wall, and that the magnitude of the work placed it entirely beyond its means; the estimated cost for 7,000 feet being $1,185,000, for 3,300 feet $560,000, or a total of nearly $2,000,000. As a consequence, instead of the county granting any aid to the United States, it became necessary for the government to extend its aid to the county by undertaking by far the larger part of the project; indeed, the aid or co-operation of the United States government, of Mr. Stewart, and of the Santa Fé Railway Company, each and all became the sine qua non of the county's ability to carry out its undertaking and obligation to its inhabitants to build a sea wall. These, under the trial court's fact findings, which the testimony in the record amply supports, were all secured as a result of Mr. Gresham's efforts. Nor was a dollar of the county's money shown to have gone to the aid either of the government or of Mr. Stewart, since it owned no interest whatever in the 600 acres Mr. Stewart conveyed to the government, none in the street opened over property belonging exclusively to the Santa Fé Railway Company, and had no claim against any part of the San Jacinto military reservation. The aid, therefore, seems to have come the county's way rather than to have gone from it.

[4] Another of the above-mentioned provisions of the Constitution, which it is claimed this transaction infringed, article 3, § 53, is as follows:

"The Legislature shall have no power to grant, or to authorize any county or municipal authority to grant, any extra compensation, fee or allowance to a public officer, agent, servant or contractor after service has been rendered or a contract has been entered into, and performed in whole or in part; nor pay, nor authorize the payment of, any claims created against any county or municipality of the state, under any agreement or contract, made without authority of law."

Appellee here, however, is not claiming any extra compensation, fee, or allowance for his

services, rendered either before or after his contract was entered into, but is only claiming the amount Galveston county contracted originally to pay him—an amount the testimony undisputedly showed was far below what would have been a reasonable fee for his services. It therefore nowhere appears that the Legislature had attempted to authorize Galveston county to grant him "any extra compensation, fee, or allowance," and the quoted article has no application.

[5, 6] To the insistence that the commissioners' court abdicated in the exercise of its nondelegable powers in favor of a committee of agents composed of the county judge and finance chairman, there appear to us to be two answers: (a) The court as such having first officially determined upon and formally passed and entered its resolution directing the employment of counsel for the particular purposes specified, the mere carrying out of that action by selection of the individual attorney, fixing his compensation, and drawing the contract with him, were only such ministerial and executive duties as could be turned over to its committee; (b) the court, by acceptance of Mr. Gresham's services, will be held to have ratified the contract its agents made with him.

The resolution and contract have already been set out. The trial judge, in his conclusions, found:

"The county, by the county commissioners, has accepted Mr. Gresham's services as shown by the resolution testified to have been prepared by the assistant county attorney and evidenced by a continued course of conduct."

It is true appellant attacks this finding as not being supported by the evidence; but since, among other things, it was undisputedly shown that the resolution thus referred to was the one wherein the United States engineers were advised that Galveston county "has secured the right of way and is now ready to proceed with and meet all the requirements" of the United States government, and that the continued course of conduct mentioned was evidenced by levying the necessary taxes and making the appropriations to pay the county's portion of the work as it progressed, we think there was ample warrant for the conclusion stated.

In Boydston v. Rockwall County, 86 Tex. 234, 24 S. W. 272, the Supreme Court held that the commissioners' court had power to ratify the act of the county judge in purchasing, without its previous order, the bonds of another county for the benefit of his own county's permanent school fund, saying with reference to the incidental matter of making the contract and selecting the agent:

"When the governing body of a municipal corporation is empowered to do an act, one purely administrative in its character, such as to make a contract, and to appoint an agent for that purpose, it may ratify such act when done by one without authority, who purports to act in its behalf."

And upon acceptance of benefits without formal order of approval, this is declared to be the rule:

"A contract made in the name of a commissioners' court by an unauthorized party may be ratified by a formal order; but such order is not necessary to such ratification. When the fact of the contract came to the knowledge of the commissioners' court, and they elected to hold the bonds or take any other benefit under them, or to carry out its provisions, they ratified it, and the county was estopped to deny its validity. Kneeland v. Gillman, 24 Wis. 42; Peterson v. Mayor, 17 N. Y. 453; Town of Athens v. Thomas, 82 Ill. 259; Tyler v. Trustees, 14 Or. 485 [13 Pac. 329]; Fisher v. La Rue, 15 Barb. [N. Y.] 323."

Likewise in Gallup v. Liberty County, 57 Tex. Civ. App. 175, 122 S. W. 291, it was held that, although the commissioners' court could not delegate to the county judge its power to sell school lands, still the county, having received the purchase money and used it for county purposes, thereby ratified the sale and could not recover the land.

It therefore makes no difference here that the record failed to show formal approval by the commissioners' court of the contract its committee had made, since, under the trial court's findings, it did accept Mr. Gresham's services after knowing what he had done.

[7] There but remains the suggestion that public policy forbade this contract as being a lobbying one.

In response to this claim the court below found:

"It is claimed by the county that the contract sued on is for lobbying with Congress and illegal. There is no evidence whatever to support the charge."

To say that the record justifies this conclusion is putting it mildly, when, by the uncontroverted testimony, "to represent the county as its attorney before the proper committee or committees of Congress in the matter of the sea wall" was carried out by the appellee's simply appearing publicly before the river and harbors committee of Congress, explaining and urging its approval of the protective improvement, and that with no attempt at nor thought of using his personal influence with any member of Congress. Such is not this court's conception of what it takes to make a "lobbying" contract.

In the American and English Encyclopedia of Law (volume 15, p. 970) it is said:

"It is, however, the right of every citizen who is interested in any proposed legislation to employ a paid agent to collect evidence and facts, to draft his bill and explain it to any committee or to any member thereof or of the Legislature, fairly and openly, and ask to have it introduced, and contracts which do not provide for any more, and services which do not go farther, violate no principle of law or rule of public policy."

See, also, Marshall v. R. R. Co., 16 How. 314, 14 L. Ed. at page 962; Burke v. Childs, 21 Wall. (88 U. S.) 441, 22 L. Ed. at page 624.

From these conclusions it follows that all assignments should be overruled and the judgment affirmed. That order will be entered.

Affirmed.