THE ATTORNEY GENERAL
OF TEXAS
AUSTIN 11, TEXAS



GERALD C. MANN
XXXXXXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Honorable Fred Erisman
Criminal District Attorney
Longview, Texas

Dear Sir:

Attention:  Mr. Mike Anglin
Opinion No. O-2880
Re:  Are the relief orders issued
in the months of July, August,
and September, when no cur-
rent funds were available nor
any provision for their pay-
ment made by the commissioners'
court, a legal obligation of
the county?

   Your recent request for an opinion of this Depart-
ment upon the above stated question has been received.

   We quote from your letter as follows:

   "Your opinion is requested upon the following
question:

   "During the last fiscal year, the Commissioners'
Court of Gregg County made an appropriation in its
budget for the relief of paupers.  This appropriation
was exhausted, and thereafter the Commissioners'
Court declared an emergency amending its budget, and
set aside another appropriation for the relief of
paupers.  At the time this second appropriation was
made, a written contract was given to various mer-
chants in the County wherein they agreed to supply
groceries and merchandise upon relief orders given
them by certain designated persons, which persons
were disignated by the Commissioners' Court as County
Relief Workers.  When this second appropriation
was exhausted, the workers continued to issue relief
orders, which relief orders were honored by the
merchants, and some three thousand dollars worth of
groceries were charged to Gregg County during the
months of July, August, and September, 1940, upon
these relief orders.

   "The appropriations made for this purpose had

been expended, and there were no current funds with which to pay them. At the beginning of the new fiscal year, October 1, 1940, these relief orders were ordered paid by the Commissioners' Court, and refused by the Auditor.

"Are the relief orders issued in the months of July, August, and September, when no current funds were available nor any provision for their payment made by the Commissioners'Court, a legal obligation of the County?

"It appears that no notice was given the merchants that the money had been expended, or at least that they were lead to believe, that they would get their money from Gregg County when they issued these relief orders. Such belief on the part of the merchants may have arisen by reason of the fact that they had signed a contract agreeing to furnish Gregg County with groceries upon the receipt of relief orders issued by authorized workers.

"Article 11, Section 7, Constitution of the State of Texas, prohibits the creation of a debt unless provision is made at the time of creating the same for levying and collecting a sufficient tax to pay the interest thereon and provide at least 2% as a sinking fund. Our courts have uniformly held that the creation of a "debt" within the meaning of the constitution, must be such a debt that is not payable out of funds on hand, or funds which the party to the contract reasonably contemplate will be under the immediate control of the Commissioners' Court.

"However, in the present instance, the merchants furnished the groceries which were accepted by the county and fed to its indigent citizens, and the County having accepted the benefits of the contract, it would seem unjust that it should so accept them and not pay for them.

"Leading case on this proposition is Sluder v. City of San Antonio, by the Commission of Appeals, 2 S. W. 2d, p. 841, wherein many cases are cited, announcing the principle as follows:

"'The rule thus firmly established by the Courts of this State rests upon the obligation of a municipality to do justice when it has received money, property, or services of another. Under such circum-

stances, the plainest principle of justice require
that it should not be permitted to receive and re-
tain the benefits of a contract without paying the
reasonable value thereof.  This principle, we think,
is supported by the great weight of authority.'

"To the same effect are West Audit Company v.
Yoakum County, Commission of Appeals, 35 S.W. 2d,
page 404; Austin Brothers v. Montague County et al.,
Commission of Appeals, 10 S.W. 2d, page 718; Colonial
Trust Company v. Hill County, Commission of Appeals,
27 S.W. 2d, p. 144, and many other cases too num-
erous to cite.

"It is our opinion that the merchants cannot
rely upon their original contract, but that since
the County has accepted the benefits of the contract,
even though no provision was made for its payment,
there is an implied contract and the County is es-
topped from denying its liability, and the claim of
the various merchants for merchandise sold, delivered,
and consumed by reason of their contract with Gregg
County are legal claims against the County and that
upon proof of the reasonable value of the goods de-
livered to Gregg County, the Auditor should approve
said claims."

Article 2351, Vernon's Annotated Civil Statutes,
specifying certain powers of the commissioners' courts
provides in part that:

"Each commissioners' court shall: .....(II)
Provide for the support of paupers and such idiots
and lunatics as cannot be admitted into the lunatic
asylum, residents of their County who are unable to
support themselves.  By the term resident as used
herein is meant a person who has been a bona fide
inhabitant of the county not less than six months
and of the State not less than one year. . . . . ."

The case of Galveston County v. Gresham (Civ. App.)
220 S.W. 560, among other things, holds in effect that
where the evidence shows that the commissioners' court has
acted with knowledge of the circumstances and that the
other party to the alleged contract has innocently placed
himself in a situation which will cause him loss in case
the contract is not sustained, it may be concluded that
the county is bound thereby.

The case of Germo Mfg. Co. v. Coleman County (Civ.

App.) 184 S.W. 1063, holds in effect that the ratification
or estoppel must be based upon action on the part of the
commissioners' court.

The case of Sluder v. City of San Antonio, supra,
among other things, holds that where a county has received
benefits under a contract which is illegal in that it has
not been made in conformity with the Constitution or statutes,
liability is held to exist, also by reason of implied con-
tract to pay the reasonable value of the benefits which the
county may have received.  This case further holds in ef-
fect that where the contract is void and no recovery is
permitted thereon, the courts hold that common honesty and
fair dealing requires that a county should not be permitted
to receive the benefits of money, property, or services
without paying just compensation therefor.

In the case of Cochran County v. West Audit Co.,
10 S.W. (2d) 229, it was said irregularities in making a
contract employing auditors to audit the books and accounts
of the county would not defeat recovery on a quantum meruit.
Where warrants are held void as being in contravention of
the Constitution, it is nevertheless erroneous to sustain
a general demurrer to a petition alleging acceptance of the
goods for which the warrants were issued, and the benefits
therefrom retained without offering restitution thereof.
A recovery thereon is not in any sense a recognition of the
validity of the contract which the fundamental law has
made void, but rather the recovery is upon that implication
of law which imposes a duty and legal liability to pay the
reasonable value of the property or services of another,
accepted and retained under circumstances justifying the
assumption that there was an intention to pay.

The case of the City of Waco v. Murray, 137 S.W.
(2d) 1062, holds in effect that where a municipal corpora-
tion receives the benefits of a contract which is illegal
because it was not made in conformity with the statutory
or charter provisions, the city will be held liable on an
implied contract for the reasonable value of the benefits
received by it.

In the above mentioned case the city raised the
proposition in which it contended that since the budget
adopted for the fiscal year in question, did not provide
for the compensation claimed by Murray, therefore, he
(Murray) could not lawfully receive or recover compensa-
tion for the services rendered by him. We  quote from
this case as follows:

"The city presents a proposition in which it contends that since, in the budget adopted for the fiscal year 1934--1935, a salary of $60 a month or an aggregate of $720 per year was provided for 'building engineer and elevator operator', appellee could not, under the facts hereinbefore stated, lawfully receive or recover compensation for the services rendered by him in operating the furnace and regulating the radiators. The city of Waco was at all times here under consideration operated by a city manager under provisions prescribing his powers and duty. City Charter (1930) Sec. 15, Art. 61. Under the provisions of said article, he was authorized to employ and remove all subordinate employees without notice. Appellee was such an employee. Regardless of the rather vague and technical description of the nature of his employment, as shown by the except from the budget hereinbefore quoted, the uncontradicted testimony showed, as hereinbefore stated, that his employment, so long as the same should continue, was to operate the elevator daily, with the possible exception of Sundays and holidays, and to operate the furnace and regulate the radiators if and when necessary to do so during the winter season. This arrangement seems to have continued without discussion or controversy for more than four years. When his customary compensation for his services in operating the furnace and regulating the radiators was not paid during the fall of 1934 as had been theretofore done, he called the matter to the attention of the city manager, who advised him that he would get the matter straightened out and corrected. Appellee, relying on such assurance, continued to perform his duties in that capacity and the city continued to accept and enjoy the benefits of the same until the then current six months period was completed. Incidentally, there was no proof that the then current budget was regularly prepared and adopted as provided by Vernon's Ann. Civ. St. art. 689a, subdivisions 13 to 16, inclusive. Neither was there any proof of its contents other than the brief excerpt above quoted. Appellee's suit, however, is upon an implied contract and not upon a formal contract based on that budget. The city manager had authority to discharge him at any

time and he had a right to quit at the end of any month. Apparently, the city manager preferred to have him continue to perform the onerous extra duties incident to the winter season. It is shown without contradiction that on two separate occasions he promised appellee that he would take the matter up and get it straightened out and corrected, and that appellee relied on such assurances.

"Our courts have held in similar cases that regardless of strict legality or formality, when a municipal corporation receives the benefits of a contract illegal because not made in conformity with statutory or charter provisions, such corporation will be held liable on an implied contract for the reasonable value of the benefits received by it.    *******."

For your information, we call your attention to the fact that this department has heretofore held that the fiscal year begins January 1 and ends December 31, in Opinions Nos. 0-2324 and 0-2478, and we enclose copies of these opinions herewith.

In view of the above stated facts and the foregoing authorities, you are respectfully advised that it is the opinion of this Department that the claims of the various merchants for merchandise sold, delivered, and consumed by reason of their contract with Gregg County are legal claims against the county and that upon proof of the reasonable value of the goods delivered to said county the auditor should approve said claims.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly
ATTORNEY GENERAL OF TEXAS

By s/Ardell Williams
Ardell Williams
Assistant

AW:BBB:wc

APPROVED DEC 13, 1940
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/BWB Chairman