

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-86,920-02

## IN RE STATE OF TEXAS EX REL. BRIAN W. WICE, Relator

## v.

## THE FIFTH JUDICIAL DISTRICT COURT OF APPEALS, Respondent

## ON APPLICATION FOR A WRIT OF MANDAMUS
## CAUSE NOS. 05-17-00634-CV, 05-17-00635-CV & 05-17-00636-CV
## IN THE FIFTH COURT OF APPEALS
## COLLIN COUNTY

NEWELL, J., delivered the opinion of the Court in which KELLER, P.J., KEASLER, HERVEY and RICHARDSON, JJ., joined. RICHARDSON, J., filed a concurring opinion. YEARY, J., filed a concurring and dissenting opinion. ALCALA, J., filed a dissenting opinion. KEEL, J., filed a dissenting opinion. WALKER, J., filed a dissenting opinion.

This case is about whether a trial court can pay an appointed prosecutor at an hourly rate even though the fee schedule approved by the judges of the county only allows for payment of a fixed fee. Relators

(the attorneys appointed to prosecute the defendant) argue that upholding the trial court's order for payment is appropriate because the trial court's determination of a reasonable fee for their services is a discretionary call, not a ministerial one.  The primary Real Party in Interest (the Collin County Commissioners Court) responds that vacating the trial court's order for payment is appropriate because the trial court lacked authority to set a fee outside of the fixed rate in the fee schedule approved by the local judges.  According to the Commissioners Court, the local rule authorizing the trial court to "opt out" of its own fee schedule conflicts with a statute that requires payment according to that fee schedule.

The Commissioners Court is correct that we are not called upon to determine whether the payment ordered in this case is reasonable.  We are only asked to determine whether the applicable statute limits the trial court's ability to approve an hourly rate when the fee schedule approved by the local judges prescribes a fixed rate.  This is the business we've chosen.  We agree with the Commissioners Court that the statute in question limits the trial court's authority, and we agree with the court of appeals that the second order for payment should be vacated.

## I. Facts

In 2015, the Public Integrity Unit of the Texas Rangers forwarded a formal complaint against Kenneth Paxton to the Collin County District Attorney's Office based upon alleged conduct that occurred before he took office as Attorney General. The Collin County Criminal District Attorney recused his office from all matters involving the cases, which were assigned to the 416th Judicial District Court.[1] The Local Administrative Judge of Collin County appointed three experienced criminal defense attorneys, Kent A. Schaffer, Brian W. Wice, and Nichole DeBorde, to serve as attorneys pro tem in those cases.[2] The judge agreed to pay each attorney a fee of $300 per hour for his or her professional services.[3]

The trial court has twice ordered interim payment for the pre-trial legal services provided by the appointed prosecutors. On January 11, 2016, the Collin County Commissioners Court considered a trial court's order for interim payment of fees and expenses to the appointed prosecutors. The Commissioners Court was made aware, at the time,

---

[1] *In re Collin Cty.*, 528 S.W.3d 807, 809 (Tex. App.—Dallas 2017).

[2] *Id*.

[3] *Id*. at 810.

that the bill was significantly greater than the fee schedule allowed.[4]

Nevertheless, the Commissioners Court voted to pay Relators $242,025

in attorneys fees for the pre-trial services already performed based upon

the $300 per hour rate.[5]  This payment is not at issue in this case.

Later, the other Real Party in Interest, Kenneth Paxton, filed a pre-

trial motion challenging the interim fees for the appointed prosecutors.

On January 4, 2017, the trial judge overruled the defendant's motion and

issued a second order for payment of attorneys fees in the amount of

$199,575.[6]  This time, however, the Commissioners Court rejected the

request for compensation, choosing instead to file a petition for writ of

mandamus to compel the trial court to vacate the second payment order.[7]

The Fifth Court of Appeals in Dallas agreed with the Commissioners Court,

granting mandamus relief and holding that the trial court lacked the

authority to order the payment.[8]  The appointed prosecutors have

petitioned us to determine who got it right:  the trial court or the court

---

[4] At the time, the fee schedule set a fixed fee of $1,000 for pre-trial preparation with judicial discretion to adjust the fee upwards in an amount not to exceed an additional $1,000.  *Id.*

[5] *Id*.

[6] *Id.* at 811.

[7] *Id.*

[8] *Id.* at 815.

of appeals.

## II.  Operative Statutes and Rules

Article 2.07 of the Texas Code of Criminal Procedure sets out how attorneys pro tem are to be appointed and compensated.  The statute provides for the appointment of either private attorneys or prosecutors from other jurisdictions within the state to take over for the recused or disqualified District or County Attorney.[9]  If the trial court appoints a prosecutor from another jurisdiction, that prosecutor gets paid for his or her regular prosecutorial job without any additional compensation.[10]  But, if the trial court appoints a private attorney, that person (or team as in this case) is paid "in the same amount and manner" as an attorney representing an indigent defendant.[11]

Compensation for an attorney representing an indigent defendant is governed by Article 26.05 of the Code of Criminal Procedure.  This statute provides in relevant part:

> (a) A counsel, other than an attorney with a public defender's office or an attorney employed by the office of capital and forensic writs, appointed to represent a defendant in a

---

[9] TEX. CODE CRIM. PROC., art. 2.07(d) ("In this article, 'attorney for the state' means a county attorney, a district attorney, or a criminal district attorney.").

[10] TEX. CODE CRIM. PROC., art. 2.07(b).

[11] TEX. CODE CRIM. PROC., art. 2.07(c).

criminal proceeding, including a habeas corpus hearing, shall be paid a reasonable attorney's fee for performing the following services, based on the time and labor required, the complexity of the case, and the experience and ability of the appointed counsel: . . . [under subsection (a) the statute lists four subsections that detail the types of work that qualify for compensation under the statute].

(b) All payments made under this article shall be paid in accordance with a schedule of fees adopted by formal action of the judges of the county courts, statutory county courts, and district courts trying criminal cases in each county. On adoption of a schedule of fees as provided by this subsection, a copy of the schedule shall be sent to the commissioners court of the county.

(c) Each fee schedule adopted shall state reasonable fixed rates or minimum and maximum hourly rates, taking into consideration reasonable and necessary overhead costs and the availability of qualified attorneys willing to accept the stated rates . . . .[12]

This statute states that the trial court "shall" authorize payment for appointed counsel (assuming that the trial court has not appointed a member of a public defender's office) according to a fee schedule adopted by formal action of the judges in a particular county.[13] While the statute allows for an appeal process when the trial court either fails to approve or affirmatively disapproves a payment, the statute commands that a commissioners court pay fees that are "in accordance with the fee

---

[12] TEX. CODE CRIM. PROC., art. 26.05.

[13] TEX. CODE CRIM. PROC., art. 26.05(b).

schedule for that county."[14]

This statutory framework created by Article 2.07 and 26.05 can be summarized fairly succinctly.

1. Appointed prosecutors are entitled to compensation in the same amount and manner as appointed defense attorneys if the appointed prosecutors are not already prosecutors serving in another office.

2. Appointed defense attorneys are entitled to compensation according to a schedule of fees adopted by formal action of the district courts trying criminal cases within a particular county.

3. The fee schedule adopted by the district courts trying criminal cases within a particular county must state reasonable fixed rates or minimum and maximum hourly rates.

At the time the appointed prosecutors sought payment in this case, the judges of the district courts trying criminal cases in Collin County had adopted local rules relating to the appointment and compensation of appointed counsel in felony cases.[15] Rule 4.01 of the local rules stated in relevant part:

A. The District Judges adopt, pursuant to Article 26.05 Tex. Code of Crim. Proc., a fee schedule for appointed attorneys, attached hereto as "Fee Schedule for Appointed Attorneys."

---

[14] TEX. CODE CRIM. PROC., art. 26.05(c).

[15] *In re Collin Cty.*, 528 S.W.3d at 810.

B.      The judge presiding over a case may authorize payment to appointed counsel that varies from the fee schedule in unusual circumstances or where the fee would be manifestly inappropriate because of circumstances beyond the control of the appointed counsel.[16]

The local rules included a fee schedule in Rule 4.01(A) setting out, relevant to this case, a fixed fee of $1,000 for pre-trial preparation in a non-capital felony case along with discretionary adjustment categories that allow additional fees not to exceed $1,000.[17]  After the Commissioners Court approved the first order for interim payment and before the trial court entered the second, the local district judges amended the fee schedule to include the directive, "In all felony cases, except as hereafter provided, counsel shall be paid according to the following fee schedule, without exception, except as provided for in Section 4.01(B)."[18]

The heart of the dispute in this case is whether the local provision in Rule 4.01(B), which allows an individual judge to "opt out" of the fee

---

[16] *Id*.

[17] *Id.*

[18] In 2017, the district judges of Collin County hearing criminal cases amended the local rules again.  They adopted by formal order a fee schedule that eliminates the "opt out" provision entirely.  Now the schedule for all felony cases, except death penalty cases, sets a minimum hourly rate of $50.00 per hour and a maximum hourly rate of $100.00 per hour with no fixed rates.

schedule and is expressly incorporated into the fee schedule itself, exceeds the trial court's authority to set fees for appointed counsel, and by extension, appointed prosecutors. It does.

### III. Standard of Review

Mandamus is intended to be an extraordinary remedy, available only in limited circumstances.[19] Even though this mandamus action is brought by the appointed prosecutors to overturn the court of appeals opinion granting mandamus relief to the Commissioners Court, we do not undertake an appellate review of the court of appeals' opinion.[20] Rather, we review the propriety of the trial court's conduct itself by undertaking a *de novo* application of the two pronged test for mandamus relief.[21] In this case, that means we determine if the trial court's order should be vacated.

For the Commissioners Court to be entitled to mandamus relief in this case, it must establish two things.[22] First, the Commissioners Court

---

[19] *Smith v. Flack*, 728 S.W.2d 784, 792 (Tex. Crim. App. 1987).

[20] *State ex rel. Young v. Sixth Judicial Dist. Court of Appeals*, 236 S.W.3d 207, 210-11 (Tex. Crim. App. 2007) ("Thus, we determine whether the court of appeals abused its discretion essentially by undertaking a 'de novo' application of the two pronged test applied below by the court of appeals.").

[21] *Bowen v. Carnes*, 343 S.W.3d 805, 810 n.6 (Tex. Crim. App. 2011).

[22] *In re Allen*, 462 S.W.3d 47, 49 (Tex. Crim. App. 2015); *see also Smith*, 728 S.W.2d at 789.

must show that it has no adequate remedy at law to redress the alleged harm.[23]  Regarding this requirement, we have held that even if a relator has a remedy at law, that relator can show that no adequate legal remedy exists at law if the remedy is "so uncertain, tedious, burdensome, slow, inconvenient, inappropriate, or ineffective as to be deemed inadequate."[24]

The court of appeals held that the Commissioners Court did not need to show that it had "no adequate remedy at law" because the order at issue was void.[25]  We have previously held that an appeal from a void proceeding does not constitute an adequate remedy at law for purposes of a mandamus proceeding.[26]  Yet we need not go that far here because we agree with the parties that neither have an adequate remedy at law in this case.  The first prong of the standard has been met.

Second, and more importantly, mandamus will only lie if the trial court exceeded its authority by signing the applicable order awarding

---

[23] *In re Allen*, 462 S.W.3d at 49.

[24] *In re McCann*, 422 S.W.3d 701, 704 (Tex. Crim. App. 2013).

[25] *In re Collin Cty.*, 528 S.W.3d at 814 (citing *In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000)).

[26] *See Garcia v. Dial*, 596 S.W.2d 524, 530 (Tex. Crim. App. [Panel Op.] 1980) ("Accordingly we hold that a direct appeal from a void proceeding does not constitute an adequate remedy at law which would appropriately supercede the remedy of mandamus sought by petitioner here at this time.").

attorneys fees.[27] The Commissioners Court must show that it has a clear right to the relief sought.[28] A clear right to relief is shown when the facts and circumstances dictate but one rational decision under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles.[29]

Mandamus relief is inappropriate if the law surrounding the court's action is unclear.[30] But even an issue of first impression can qualify for mandamus relief when the principle of law is so plainly prescribed as to be free from doubt.[31] And while this Court generally does not undertake issues of statutory construction on mandamus review, if the terms of a statute are clear, the Court can address its application. When the statutory terms at issue are ambiguous, mandamus relief is inappropriate.[32] Indeed, as the court of appeals noted in this case, we have previously concluded that granting mandamus relief was appropriate

---

[27] *In re Allen*, 462 S.W.3d at 49; *see also Smith*, 728 S.W.2d at 792.

[28] *In re Allen*, 462 S.W.3d at 49.

[29] *Id.* (citing *In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex. Crim. App. 2013)).

[30] *In re Medina*, 475 S.W.3d 291, 298 (Tex. Crim. App. 2015).

[31] *In re State ex rel. Weeks*, 391 S.W.3d at 122.

[32] *In re Daniel*, 396 S.W.3d at 549 n.19.

in a different context because the terms of Article 26.05–the statute at issue in this case–are clear.[33]  Though Article 26.05 has been amended since that case, those amendments did not render the relevant statutory provisions ambiguous.

## IV.  Article 26.05 Clearly Limits a Trial Court's Authority

As discussed above, the relevant statutes at issue envision that a trial court has the authority to appoint counsel for the defense and, in the case of a recused or disqualified prosecutor's office, attorneys pro tem for the state.[34]  If the trial court is called upon to appoint an attorney pro tem for the state and the trial court does not appoint a neighboring district or county attorney, the trial court has a ministerial duty to compensate that attorney in the same way that an attorney representing a criminal defendant is compensated.[35]  A trial court still has discretion to set a fee in each case, but compensation must fall within a fee schedule adopted by formal action of the judges of the county courts, statutory

---

[33] *Smith*, 728 S.W.2d at 789.

[34] TEX. CODE CRIM. PROC., art. 26.05(a); TEX. CODE CRIM. PROC., art. 2.07(a); TEX. CODE CRIM. PROC., art. 2.07(b-1).

[35] TEX. CODE CRIM. PROC., art. 2.07(c).

county courts, and district courts trying criminal cases in each county.[36] That fee schedule must have either a reasonable fixed rate or minimum and maximum hourly rates that take into consideration reasonable and necessary overhead costs and the availability of qualified attorneys willing to accept the stated rates.[37] The "opt-out" provision in this case runs afoul of the statutory limitation that the fee be either fixed or cabined by minimum and maximum rates. As the court of appeals noted, "By requiring the judges to set both minimum *and* maximum hourly rates, it is clear the legislature was concerned not only with attorneys receiving a fair rate of payment, but also with counties not being forced to pay excessive fees."[38]

Specifically, with regard to the reasonableness of the fees, the statute allows for two different reasonableness determinations. First, the judges trying criminal cases in the county courts, statutory county courts, and district courts decide collectively on reasonable fixed rates or minimum and maximum hourly rates as part of a fee schedule that they

---

[36] TEX. CODE CRIM. PROC., art. 26.05(b).

[37] TEX. CODE CRIM. PROC., art. 26.05(b), (c).

[38] *In re Collin Cty.*, 528 S.W.3d at 812.

adopt through formal action.[39] Second, the individual judge in a particular case decides on a reasonable fee in accordance with the schedule of fees that the judges trying criminal cases in the county adopted.[40] Though the individual judge has discretion to award fees within the adopted schedule, the statute does not allow the judge to award fees outside of that schedule. Otherwise, the statutory requirement that adopted fees or rates be either fixed or subject to minimums and maximums becomes meaningless. Despite arguments to the contrary, we are not holding that the fixed pre-trial preparation fee at issue in this case was "reasonable." Rather, we are deciding whether mandamus relief is appropriate based upon a statute that sets out how the reasonableness of the particular fee at issue must be determined.

This understanding is also borne out by our Legislature's response to our decision in *Smith v. Flack*. In *Smith*, several defense attorneys sought payment for their services, but the Commissioners Court of Harris County only awarded payment of a reduced amount.[41] The Commissioners Court relied upon a fee schedule that had been set by the

---

[39] TEX. CODE CRIM. PROC., art 26.05(b), (c).

[40] TEX. CODE CRIM. PROC., art. 26.05(a), (b).

[41] *Smith*, 728 S.W.2d at 788.

local judges to cap the requested fees based upon the maximum amount set out in that schedule.[42]  We held that Article 26.05 did not authorize the limitation set out by the adopted fee schedule because, at the time of the case, the statute only limited the trial court's authority to set a minimum fee.[43]  As we noted of the statute in effect at the time, "the Legislature has expressly avoided setting specific *maximum* limits on the size of the court-appointed attorney fees."[44]  Consequently, we determined that the statute at issue granted the trial court sole authority to set a "reasonable fee."[45]

*Smith* was decided in April of 1987, which happened to be a legislative-session year.  During that legislative session, our Legislature amended Article 26.05 to include the requirement that fee schedules include both a minimum *and a maximum* limit on court-appointed attorney fees.[46]  In response to our decision in *Smith*, our Legislature

---

[42] *Id.*

[43] *Id.* at 789.

[44] *Id*.

[45] *Id.*

[46] Senate Bill 1108, 70th Leg., R.S. (1987).

made a maximum limit on appointed attorney fees a requirement.[47]

Commissioners courts lost the battle in court to rely upon limits to a trial

court's authority to set fees, but they won the war in the Legislature.[48]

The appointed prosecutors in this case argue that the statutory

limits on payments in accordance with a fee schedule conflict with the

statutory provision that allows an individual trial court to set a reasonable

fee.[49] But this contention is also belied by the text of the statute itself.

Article 26.05(c) sets out an appeal process whereby appointed attorneys

can appeal a trial court's refusal to pay their requested fees.[50] Under the

---

[47] *See, e.g.*, *Moore v. State*, 868 S.W.2d 787, 790 (Tex. Crim. App. 1993) (noting that courts must assume that the legislature is aware of relevant case law interpreting a statute when it amends that statute); *see also Henry v. Cox*, 520 S.W.3d 28, 37 (Tex. 2017) (noting that under the Texas Constitution a district court's supervisory power remains subject to exceptions and regulations as may be prescribed by law).

[48] The lawsuit at issue in *Smith* was filed by defense attorneys against the Harris County Auditor and the Harris County Commissioners Court, not the local board of judges. *Smith*, 728 S.W.2d at 786. The Commissioners Court in that case sought to rely upon the maximum limits placed upon attorneys fees by the local board of judges. *Id.* at 787-88. We held that the trial court was not bound by those limits because the statute at issue did not place any limits on the trial court's discretion. *Id.* at 793. In light of the posture of the case, our Legislature's requirement that the fee schedule approved by the local judges contain a maximum limit in response to *Smith* cannot be read as an endorsement of the authority of local judges to set fee schedules with no maximum limit. The amendments placed a duty on trial courts to adhere to set limits, a duty that had not been present in *Smith*.

[49] The dissents also argue this point. Yet they offer no alternative reading to the statute that harmonizes subsections (a), (b), and (c). *See* Antonin Scalia & Bryan A. Garner, Reading Law 180 ("[I]t is invariably true that intelligent drafters do not contradict themselves (in the absence of duress). Hence there can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously.").

[50] Tex. Code Crim. Proc., art. 26.05(c).

text of that provision, even if the attorney is victorious in his or her appeal, the presiding judge may still only award a payment "in accordance with the fee schedule for that county."[51] A trial court may still set a reasonable fee, but that authority is limited to the fee schedule set by formal action of the judges of the county courts, statutory county courts, and district courts trying criminal cases in each county.[52]

Further, incorporating the open-ended "opt out" provision of Rule 4.01(B) into the fee schedule itself did not bring the local rules into compliance with the statute. Subsection (a) of Article 26.05 recognizes a trial court's authority to set a reasonable fee for attorney services. But subsection (b) of Article 26.05 limits that authority by requiring any reasonable fee to be paid in accordance with an adopted fee schedule. And subsection (c) of Article 26.05 sets out the requirements for that fee schedule, including the limitation that the fee schedule set out either a

---

[51] *Id.*

[52] *Id.* In this way, Article 26.05(c) operates in a fashion that is analogous to how Section 75.401 of the Texas Government Code handles salary-setting roles of court administrators. As our sister court has noted when considering the court administrator statute, "Under section 75.401, the district judges ('the judges served') determine if compensation is 'reasonable,' but the range is 'set by the commissioners court.'" *Henry*, 520 S.W.3d at 37. Though Article 26.05(c) authorizes the trial courts to decide upon "the range," commissioners courts are entitled to rely upon that range as a limit upon what the trial courts ultimately assess as a "reasonable" fee.

reasonable fixed rate or minimum and maximum hourly rates.[53]

When reading statutes, courts are not prohibited from using logic and common sense. We presume that every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible.[54] We read the statute as a whole.[55] Allowing the incorporation of an "opt out" provision without fixed rates or set limits into the adopted fee schedule fails to give effect to the entire statute. It renders meaningless the statutory requirements that payment be made in accordance with an approved fee schedule and that the approved fee schedule contain either "reasonable fixed rates or minimum and maximum hourly rates." Giving effect to the entire statute, it plainly requires placement of limitations on fees for appointed attorneys and it prohibits payment outside of those limitations. The statute is not

---

[53] Reading the statute to say that the "opt out" provision only conflicts with subsection (c) of Article 26.05 fails to read the statute as a whole. Subsection (b) requires payment in accordance with a fee schedule described in subsection (c). The "opt out" provision is not part of a fee schedule described in subsection (c). Payment under it necessarily conflicts with subsection (b).

[54] *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997).

[55] *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 167 ("Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts.").

reasonably susceptible to any other interpretation.[56]

Here, the local judges set out a fee schedule with fixed rates and minimum and maximum limits that they determined to be reasonable. But they also adopted an open-ended "opt-out" provision in Rule 4.01B. This provision ran afoul of the plain language of Article 26.05, which limits a trial court's authority to order payment within a fixed fee schedule. We agree with the court of appeals that Article 26.05 does not permit judges to expand that authority by individually setting a fee outside the range of what has been collectively agreed upon as reasonable.[57]

## V. Arguments of Amici Curiae

The appointed prosecutors in this case argue, along with the National Association of Criminal Defense Lawyers as amicus curiae supporting their position, that vacating the trial court's order of payment

---

[56] A statute is ambiguous when it is reasonably susceptible to more than one interpretation. *Arteaga v. State*, 521 S.W.3d 329, 334 (Tex. Crim. App. 2017). Even if we were to assume that Article 26.05 is ambiguous, the terms of the statute place a duty upon trial courts to authorize compensation at either a fixed rate or within a minimum or maximum hourly rate. *See* TEX. GOV'T CODE § 311.016(2) (setting out that the Legislature's use of the word "shall" imposes a duty unless the context in which the word or phrase appears necessarily requires a different construction). For the statutory terms at issue to be read permissively, the statute would have to contain an explicit exception to the requirement that the fee schedule include "fixed rates or minimum and maximum hourly rates." It does not, and we cannot construe from the absence of such an explicit exception that trial courts are nevertheless permitted to act contrary to a statutory duty.

[57] *In re Collin Cty.*, 528 S.W.3d at 812-13.

in this case will have a negative impact on adequate compensation for attorneys representing indigent defendants in complex criminal cases. But even though the compensation for appointed prosecutors is calibrated to the compensation for attorneys representing indigent criminal defendants, that is not the application of the statute we are faced with here. The statutory terms at issue are clear; but applying the statutory limitations to compensation for indigent defense without exception may conflict with constitutional guarantees.

We acknowledge that the lack of adequate compensation for appointed counsel can pose a serious threat to a fundamentally fair trial.[58] The outcome of a criminal case should not depend upon how much money a defendant has. But that is not the application of the statute we are dealing with here; any possible constitutional concerns present in an indigent defense case are not present in this case.[59] Here, we are only

---

[58] *See, e.g., Martinez-Macias v. Collins*, 979 F.2d 1067, 1067 (5th Cir. 1992) (holding that the defendant was denied his constitutional right to counsel due to inadequate funding).

[59] Acknowledging that there is a Sixth Amendment right to counsel and that, in an unusual or unforseen circumstance, statutory limitations upon a trial court's ability to set payment for counsel might interfere with that right does not render the statute "a dead letter." It merely recognizes the possibility that even though the statute may operate constitutionally in the normal course of business, it may be subject to an as-applied constitutional challenge in unusual or unforseen circumstances. *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011) (noting that an as-applied constitutional challenge to a statute allows that a statute may be valid as applied to one set of facts and invalid as applied to a different set of facts). A determination that a statute is unconstitutional in a particular application only prohibits that particular application of a

faced with an application of an unambiguous statute.

A group of elected district attorneys and the former State Prosecuting Attorney also argue on behalf of the appointed prosecutors in this case. In their amicus curiae brief, they contend that, as a matter of policy, interpreting Article 26.05 as limiting a trial court's ability to set fees will result in fewer competent attorneys agreeing to sign on for high profile cases such as this one. But our Legislature appears to have already weighed this concern and set course in a different direction. Article 2.07 already allows for counties to avoid this issue altogether by appointing district or county attorneys to step in where a local prosecutor is either disqualified or recused. If the county chooses this path, additional compensation is not required at all.

Relatedly, we are not called upon, in this case, to address limitations upon the discretion of commissioners courts.[60] Article 5,

---

statute without invalidating the entire statute. *See Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 328-29 (2006) ("Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem. We prefer, for example, to enjoin only the unconstitutional applications of a statute while leaving other applications in force[.]").

[60] *See, e.g., Guynes v. Galveston Cty.*, 861 S.W.2d 861, 863 (Tex. 1993) (noting the authority of commissioner's court to hire counsel to assist it or other officials in carrying out their responsibilities so long as the statutory duties of other county officials are not thereby usurped); *see also Galveston Cty. v. Gresham*, 220 S.W. 560, 563 (Tex. Civ. App.— Galveston 1920, writ. ref'd) (noting that the acceptance by commissioners court of the services of an attorney ratifies an agreement previously made by an unauthorized party).

Section 18 of the Texas Constitution provides that a commissioners court "shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State . . . ."[61] It is well-settled that a commissioners court has the power to hire outside counsel to assist other elected officials in carrying out their responsibilities as long as it does not infringe on the statutory duties of other officials.[62] Nothing in this Court's opinion should be read to interfere with a commissioners court's authority to approve funding necessary to assist a trial court in carrying out its responsibilities independent of the statutory limitations placed upon the trial court's authority by Articles 2.07 and 26.05.[63]

Ultimately, what amounts to good or bad policy is not up to this Court to decide.[64] As we noted in *In re Allen*, "Public-policy arguments

---

[61] TEX. CONST. art. 5, § 18(b).

[62] *Guynes*, 861 S.W.2d at 863.

[63] The Commissioners Court appears to have already done that when it voted to approve the first payment to the appointed prosecutors after rejecting the same statutory arguments presented to this Court in this case. *See, e.g., Rodgers v. Taylor Cty.*, 368 S.W.2d 794, 797 (Tex. Civ. App.—Eastland 1963, writ ref'd n.r.e.) (noting that the commissioners court could ratify contract with court reporter because it had authority to authorize payment for services rendered by the court reporter independent of reporter's contract with District Attorney for those services).

[64] *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 348 ("The problem is that although properly informed human minds may agree on what a text means, human hearts often disagree on what is right. That is why we vote (directly or through our representatives) on what the law ought to be . . . .").

quickly pile up on both sides of the debate . . . . But they find utility only in the Legislature and should be directed there."[65]  Mandamus is an inappropriate vehicle for weighing competing policy arguments.  If the application of the statute at issue seems too harsh in this case, it is up to our Legislature to decide if and how to address it.

## VI.  Conclusion

In its amicus curiae brief in support of the Commissioners Court, the County Judges and Commissioners Association of Texas observed:

> The fee schedule established by Local Rule 4.01(a) is valid, even if it may [be] inadequate to address the particular issues that arose in this case.  If the schedule is inadequate, it may be amended to provide for extraordinary cases without vesting an unfettered discretion in each individual trial judge in violation of the parameters of the statute.
>
> By finding that 4.01(b) is invalid, the Court of Appeals left in place 4.01(a) and the specific fee schedule that provides for attorney's fees.  Should the Collin County judges determine that the fee schedule under 4.01(a) is inadequate, they may create a new fee schedule that is both specific and contains a broader range of attorney's fees.  What the judges may not do is create a limitless range of fees, as was done in 4.01(b).[66]

We agree.  Here, the trial court exceeded its authority by issuing an order for payment of fees that is not in accordance with an approved fee

---

[65] *In re Allen*, 462 S.W.3d at 53.

[66] Brief for County Judges and Commissioners Association of Texas as Amici Curiae Supporting Commissioners Court, No. WR-86,920-02 (Tex. Crim. App. Oct. 26, 2017).

schedule containing reasonable fixed rates or minimum and maximum hourly rates.[67]  We, therefore, agree with the court of appeals that the Commissioners Court of Collin County is entitled to mandamus relief.  We vacate the trial court's second order for interim payment and order the trial court to issue a new order for payment of fees in accordance with a fee schedule that complies with Article 26.05(c) of the Texas Code of Criminal Procedure.

Filed: November 21, 2018

Publish

---

[67] Nothing in this Court's opinion should be read as announcing a "one size fits all" scheme for payment of fees.  Trial judges in Texas can develop a wide array of payment structures to account for unforeseen circumstances.  They simply must be based upon reasonable fixed rates or minimum and maximum hourly rates.